| | |
|---|---|
| ANA BERNAL, AMIEE MARQUEZ, PATRICIA JUAREZ, and CLARA ROA, <br><br> Petitioners, <br><br> v. <br><br> KOHL'S CORPORATION, and KOHL'S, INC., <br><br> Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 2:23-cv-01542-LA |

**PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

Petitioners Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa (collectively, "Petitioners") hereby submit this memorandum of points and authorities in support of their motion to compel arbitration against Respondents Kohl's Corporation and Kohl's Inc. (collectively, "Kohl's"), under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and for sanctions under Section 1281.97 of the California Code of Civil Procedure against Kohl's and in favor of Petitioners.

## I. INTRODUCTION

Petitioners are four individuals who purchased products from Kohl's through its website and later learned that Kohl's had used false and deceptive marketing to induce them to buy the products.

Kohl's has long forced its online customers, including Petitioners, to arbitrate any dispute. *See* Dkt. 55-1 ("2020 Terms") at 3–4; Dkt. 55-2 ("2022 Terms") at 3–4. The 2020 Terms and the 2022 Terms each contain the same arbitration agreement that requires "all [d]isputes" with Kohl's to be resolved through arbitration "conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules as applicable" ("AAA

1

Arbitration Agreement"). *See* 2020 Terms at 3–4; 2022 Terms at 3–5; *see also* Dkt. 55-3 at 5–6 (showing that there are no differences in the AAA Arbitration Agreement between the 2020 Terms and 2022 Terms). The AAA Arbitration Agreement includes a pre-arbitration notification process designed to facilitate settlement before arbitration. *See* 2020 Terms at 4; 2022 Terms at 4.

As directed by the arbitration agreement, in December 2022, each Petitioner properly began this dispute-resolution process by serving on Kohl's a Notice of Dispute. *See* Dkt. 55 ("Pak Decl.") ¶ 7; Dkt. 55-5, 55-6, 55-7, 55-8 ("Petitioners' Notices of Dispute"). Petitioners thereby initiated the necessary contractual process for "the party seeking arbitration." 2020 Terms at 4; 2022 Terms at 4. For months, Petitioners attempted to resolve their disputes informally with Kohl's, culminating in a mediation session on April 17, 2023, presided over by a former federal judge. Settlement discussions continued after that mediation.

But while Petitioners negotiated in good faith, Kohl's hatched a subterfuge. It drafted new terms and conditions to erect substantial burdens on Petitioners. These new terms required as a "**mandatory** . . . **condition precedent to initiating arbitration**" that claimants physically mail a detailed description of each claim that is "*personally signed* by [the claimant] and [her] attorney," and then required each claimant to "*personally* participate in an *individualized* telephone settlement conference." Dkt. 55-4 ("2023 Terms") at 4 (bold in original, italics added). And instead of AAA, the new terms designated National Arbitration and Mediation as the arbitral forum; along with a convoluted "mass claims" process in which only certain claims would be arbitrated while the rest would "**be delayed**" pending a global settlement. *Id.* at 6.

On May 22, 2023, Kohl's posted these new terms and conditions to its website. *See* 2023 Terms. Instead of assenting to the 2023 Terms, each Petitioner, on May 22, 2023, filed a formal arbitration demand with AAA and paid all applicable filing fees. *See* Pak Decl. ¶ 8; Dkt. 55-9, 55-10, 55-11, 55-12 ("Petitioners' Demands for Arbitration"); Dkt. 55-13 ("June 7, 2023 AAA Letter") (confirming AAA's receipt of Petitioners' Demands for Arbitration).

After receiving Petitioners' demands, AAA asked Kohl's to confirm it would comply with the AAA rules, as required by its arbitration agreement. *See* June 7, 2023 AAA Letter. Kohl's

2

not only refused, but it also never paid the fees triggered by Petitioners' properly filed arbitration demands. Due to Kohl's refusal to proceed or pay filing fees as required by its own agreement, AAA administratively closed the arbitrations, specifically noting that "Kohl's failed to comply with the AAA's policies . . . including the Costs of Arbitration" policies. *See* June 7, 2023 AAA Letter; *see also* Dkt. 55-14 ("June 20, 2023 AAA Letter") (notifying parties that AAA was administratively closing Petitioners' arbitrations "because Kohl's has confirmed they will not register their consumer arbitration agreement on the Consumer Clause Registry and because Kohl's has previously not complied with our Consumer Arbitration Rules ('Rules') and Consumer Due Process Protocol ('Protocol')").

Petitioners now ask this Court to compel arbitration before AAA under its Consumer Arbitration Rules. Under binding precedent, a court must grant a motion to compel arbitration if: (1) the parties have entered into a valid arbitration agreement; and (2) the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002). Both prongs are easily met. Each Petitioner made purchases of supposedly discounted items on kohls.com, expressly agreeing to the 2020 or 2022 Terms—including the AAA Arbitration Agreement contained therein. *See* Dkt. 56 ("Bernal Decl.") ¶ 3; Dkt. 57 ("Marquez Decl.") ¶ 3; Dkt. 58 ("Juarez Decl.") ¶ 3; Dkt. 59 ("Roa Decl.") ¶ 3. Under the AAA Arbitration Agreement, all disputes must be resolved by binding arbitration "conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules as applicable." 2020 Terms at 4; 2022 Terms at 4.

Kohl's does not dispute that Petitioners' false discount claims fall within the arbitration clause, which applies broadly to "claims that . . . in any way relate to or arise out of any aspect of the relationship between you and Kohl's." 2020 Terms at 4; 2022 Terms at 4. But while Kohl's may argue that its 2023 Terms apply, they clearly do not. Petitioners had not agreed to those terms when they filed their arbitration demands (and they still have never assented to the 2023 Terms); and Kohl's unilateral change of the terms cannot possibly control the arbitral process for claims Kohl's had already begun negotiating with Petitioners pursuant to the pre-arbitration process

3

required by the AAA Arbitration Agreement, which process Petitioners initiated by serving Notices of Dispute in December 2022. This Court must therefore compel Kohl's to arbitration with Petitioners before AAA under its Consumer Arbitration Rules.

In addition, California law imposes mandatory statutory sanctions where, as here, a party forces an arbitration contract on consumers and then refuses to pay the fees required for the arbitration to move forward. Kohl's acted with profound bad faith in taking months to pretend to negotiate an informal resolution of the disputes, then abruptly changing the arbitration agreement and failing to pay mandatory arbitral fees and otherwise follow AAA's rules. The California legislature enacted Senate Bill 707 in 2019 and Senate Bill 762 in 2021 specifically to deter this conduct, and those laws require specific sanctions for Kohl's under that law.

## II. FACTUAL BACKGROUND

### A. Kohl's Requires Customers to Arbitrate All Disputes Through AAA.

Like many other companies, Kohl's has long subjected customers to binding arbitration. Its online terms and conditions require arbitration, and customers must agree to those terms to make purchases through Kohl's website. Kohl's routinely enforces the binding arbitration provision in its terms against its consumers. *See, e.g.*, *Gordon v. Kohl's Dep't Stores, Inc.*, 119 F. Supp. 3d 356 (E.D. Pa. 2015); *Ineman v. Kohl's Corp.*, No. 14-cv-398, 2015 WL 1399052 (W.D. Wis. Mar. 26, 2015). Petitioners in this action made purchases over the last few years from Kohl's through its website (kohls.com) and so each of them agreed to the 2020 Term or 2022 Terms, or both. *See* Bernal Decl. ¶ 3; Marquez Decl. ¶ 3; Juarez Decl. ¶ 3; Roa Decl. ¶ 3. Because the 2020 Terms and 2022 Terms both contain the AAA Arbitration Agreement, Petitioners each have the same right to arbitrate their claims against Kohl's with AAA under either set of terms. *See* 2020 Terms at 3–4; 2022 Terms at 3–5; *see also* Dkt. 55-3 at 5–6.

The AAA Arbitration Agreement includes a binding arbitration provision:

> **YOU AND KOHL'S AGREE THAT ANY DISPUTE, CONTROVERSY, OR CLAIM ARISING OUT OF, OR RELATING TO THESE TERMS OF USE, INCLUDING**

4

> **WITHOUT LIMITATION ANY PURCHASES . . . SHALL BE RESOLVED ONLY BY . . . BINDING, BILATERAL ARBITRATION**

2020 Terms at 3; 2022 Terms at 3. The Terms make clear that essentially all conceivable lawsuits against Kohl's are arbitrable:

> This Arbitration Agreement Applies to all "Disputes." . . . "Disputes" shall include . . . any claims or controversies between you and Kohl's that are related in any way to these Terms of Use, including . . . your use of this website, sales, returns, refunds, cancellations, defects, policies, privacy, advertising, and/or any communications between you and Kohl's . . . Disputes also include . . . claims that . . . in any way relate to or arise out of any aspect of the relationship between you and Kohl's, whether based in contract, tort, statute, fraud, misrepresentation, advertising claims, or any other legal theory . . . .

2020 Terms at 3–4; 2022 Terms at 3–4. And the AAA Arbitration Agreement has a broad delegation clause, requiring that an "arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." 2020 Terms at 4; 2022 Terms at 4.

The AAA Arbitration Agreement lays out in detail how arbitrations are to proceed between Kohl's and its customers. A customer "must first notify [Kohl's] of the Dispute in writing," commencing a pre-arbitration negotiation period. 2020 Terms at 4; 2022 Terms at 4. If the negotiations fail, the customer "must send a letter requesting arbitration and describing [his or her] claim to Kohl's." 2020 Terms at 4; 2022 Terms at 4. After that letter is served, the customer's claim against Kohl's proceeds to arbitration with AAA. 2020 Terms at 4; 2022 Terms at 4. The AAA is a well-respected non-profit organization that has been administering arbitrations for nearly a century. It has tailored rules for consumer arbitrations that protect consumers and ensure fairness in its proceedings, which Kohl's promised to follow:

> The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's *Consumer Arbitration Rules* as applicable.. . . The AAA's rules are available at www.adr.org. . .. *Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules*. Kohl's will reimburse all such filing, administration and arbitrator fees for claims totaling less than $10,000 unless the arbitrator determines the

5

> claims are frivolous. Likewise, Kohl's will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person *in the county where you live* or at another mutually agreed location.

2020 Terms at 4 (emphasis added); 2022 Terms at 4. The AAA Arbitration Agreement prominently requires that "ALL CLAIMS . . . MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS," which means that "CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER." 2020 Terms at 4; 2022 Terms at 4. Petitioners wished to arbitrate their claims under the AAA Arbitration Agreement and tried to do so. *See* Pak Decl. ¶ 8; Petitioners' Demands for Arbitration; June 7, 2023 AAA Letter.

### B. Each Petitioner Follows the Terms to the Letter Beginning in December 2022.

Petitioners all reside in California. *See* Bernal Decl. ¶ 2; Marquez Decl. ¶ 2; Juarez Decl. ¶ 2; Roa Decl. ¶ 2. They each purchased clothing or other goods from kohls.com which Kohl's claimed to be selling at a discount. *See* Bernal Decl. ¶ 3; Marquez Decl. ¶ 3; Juarez Decl. ¶ 3; Roa Decl. ¶ 3. But Kohl's rarely if ever sold its products at the purported "regular" or "original" prices—it essentially always sold at "discounted" prices, meaning the listed "regular" or "original" prices were not genuine. This is an unlawful practice under California law. *See* Petitioners' Demands for Arbitration (asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; False Advertising Law, Cal. Bus. & Prof. Code § 17501 *et seq.*; and Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*). Kohl's knows this, as it has previously paid millions of dollars to settle claims arising out of these deceptive pricing practices. *See* Order Granting Prelim. Approval of Class Action Settlement, *Russell v. Kohl's Dep't Stores, Inc.*, No. 15-cv-01143 (C.D. Cal. Apr. 11, 2016), ECF No. 71 (approving $6.15 million class action settlement); Statement of Decision, *People v. Kohl's Dep't Stores, Inc.*, No. BC643037, 2021 WL

6

3507072, at *3 (Cal. Super. July 13, 2021) (stipulating that "certain shop keeping units (SKUs) offered for sale online were never offered online at the advertised regular or original price").

Seeking redress for purchasing under a false discount, each Petitioner began the dispute-resolution process required by the Terms by serving on Kohl's a Notice of Dispute in December 2022. *See* Pak Decl. ¶ 7; Petitioners' Notices of Dispute. By serving a Notice of Dispute, Petitioners initiated the necessary contractual process for "the party seeking arbitration." 2020 Terms at 4; 2022 Terms at 4. Kohl's initially acted as if it were open to resolving these claims in good faith and agreed to mediate the claims before a former federal judge, which took place on April 17, 2023. But Kohl's had no intention of settling the claims—rather, it took the time to devise new terms that would favor it in subsequent proceedings.

### C. Kohl's Posted a New Arbitration Agreement in Its Online Terms on May 22, 2023.

Without notifying anyone, Kohl's posted a new version of its terms on May 22, 2023. *See* 2023 Terms. The 2023 Terms purported to apply to claims that "arose before you entered into these Terms" even if the claims "are subject to ongoing litigation." *Id.* at 4. The 2023 Terms sharply limited the delegation clause, providing that "issues relating to the scope, validity, and enforceability of the Arbitration Agreement or . . . relating to the arbitrability of any Dispute [or] . . . whether the arbitration administrator cannot or will not administer the arbitration in accordance with this Arbitration Agreement . . . **are for a court of competent jurisdiction to decide**." *Id.* (emphasis in original).

The 2023 Terms erected substantial barriers for consumers, most of whom Kohl's knows have claims of a relatively small value. First was a "**Mandatory Pre-Arbitration Informal Dispute Resolution**," which required "a detailed description of the Dispute" specifically "identify[ing] any transaction at issue" and "a detailed description of: (a) the nature and basis of the Dispute and any claims and (b) the nature and basis of the relief sought (including a detailed calculation of any damages)." *Id.* The "notice to us must be personally signed by you (and your

7

attorney[]]," and physically mailed to Kohl's.  *Id.*  Each consumer must "personally participate in an individualized telephone settlement conference (and if you are represented by an attorney, your attorney may also participate)."  *Id.*  And, once this *pre*-arbitration process ended, the maze continued with the burdensome arbitration procedures.

To commence arbitration, consumers "must send an arbitration demand to National Arbitration and Mediation ('NAM')."  *Id.* at 5.  Worried that even NAM may refuse to enforce Kohl's one-sided arbitration provision (as AAA surely would), the 2023 Terms provide an escape hatch: "If NAM is unavailable or unwilling to administer the arbitration consistent with the NAM Rules *as modified by this Arbitration Agreement*, the parties shall agree on an administrator that will do so."  *Id.* at 5.  The modifications begin with *another* individualized signature and physical mailing requirement: the demand "must be personally signed by you" and mailed to NAM and Kohl's.  *Id.*  Special rules apply "[i]f 25 or more similar Disputes (including yours) are asserted against Kohl's."  *Id.* at 6.  In that event, 100 test cases are arbitrated, while the "remaining Disputes shall not be filed or deemed filed in arbitration."  *Id.*  After the 100 cases resolve, the parties mediate.  Then, 100 more cases are arbitrated, with more mediation at the end.  Finally, at the end of this long process, the remaining cases "may only proceed in a court of competent jurisdiction."  *Id.*

In other words, if Kohl's wishes to, it can stretch out the cases interminably, arbitrate 200 low-value cases at most, and then require the rest to file in court anyway after extensive delays. This is not the efficient, bilateral arbitration process consumers were promised by the Supreme Court's FAA precedent, nor is it the process reputable arbitration administrators like AAA provide. Indeed, other courts have recently found batched arbitration procedures similar to this one to be unconscionable.  *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) (holding Verizon's batched arbitration procedures unconscionable); *Heckman v. Live Nation Entertainment, Inc.*, Case No. 2:22-cv-00047, 2023 WL 5505999 (C.D. Cal. Aug. 10, 2023) (holding Ticketmaster's batched arbitration procedures unconscionable).

8

### D. Each Petitioner Filed an Arbitration Demand with AAA on May 22, 2023.

Petitioners all filed arbitration demands with AAA in accordance with the AAA Arbitration Agreement, including by paying applicable filing fees.  *See* Pak Decl. ¶ 8; Petitioners' Demands for Arbitration.  On June 7, 2023, AAA confirmed receipt of Petitioners' "individual consumer demands for arbitration filed against Kohl's on May 22, 2023," and confirmed "that the arbitration clause filed by claimants provides for administration by the AAA."  June 7, 2023 AAA Letter.  At this time, Petitioners had never received notice from Kohl's of the 2023 Terms, much less agreed to them.  *See* Bernal Decl. ¶ 5; Marquez Decl. ¶ 5; Juarez Decl. ¶ 5; Roa Decl. ¶ 5.

Apparently, Kohl's was a serial violator of its own arbitration terms, because AAA told Petitioners that "[d]ue to Kohl's prior non-compliance, in order for the AAA to consider accepting these consumer disputes, as well as disputes going forward, Kohl's must advise the AAA of its intention to comply with the AAA's Consumer Rules and Protocol."  June 7, 2023 AAA Letter. Beyond agreeing, Kohl's would also need to comply with AAA's Consumer Arbitration Rules and Consumer Due Process Protocol by "register[ing] its arbitration clause that names the AAA on the Consumer Clause Registry on our website."  *Id.*  Under AAA's Rules, Kohl's was required to pay a "nonrefundable review and Registry fee" to register the AAA Arbitration Agreement, along with all "other filing fees that are owed."  Dkt. 55-15 ("AAA's Consumer Arbitration Rules") at 16–17 (Rule 12).  Until Kohl's agreed to comply with AAA's rules and pay the applicable fees, "absent a court order, the AAA will be unable to provide arbitration administration to the parties."  *Id.*

Kohl's did not comply, did not register its agreement, and did not pay the required fees. So, on June 20, 2023, AAA closed its files on Petitioners' arbitration demands, noting that "[w]ere Kohl's to register its consumer arbitration clause in the future with the AAA's Registry, Kohl's would need to pay the fee to register their clause."  June 20, 2023 AAA Letter.  Petitioners then filed this action so that AAA will be able to arbitrate these disputes.

## III. ARGUMENT

The AAA Arbitration Agreement applies to Petitioners' underlying false discount claims, which means this Court must compel Kohl's to arbitrate with AAA and under its rules. Petitioners are also entitled to sanctions under California's Senate Bill 707 because Kohl's evasion of the very arbitration provision it drafted and imposed has prevented Petitioners from resolving their claims by arbitration.

### A. The AAA Arbitration Agreement Requires Kohl's to Arbitrate Under AAA's Rules.

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts apply a simple two-part test: (1) whether the parties have entered into a valid arbitration agreement; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).

Where the parties have formed a valid agreement to arbitrate, the FAA requires a court to enforce the parties' arbitration agreement in accordance with its terms. *See Volt Info. Scis., Inc. v. Stanford Univ.*, 489 U.S. 468, 478 (1989). The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (quoting *American Express Co. v. Italian Colors Restaurant,* 570 U.S. 228, 233 (2013)). This Court must compel Kohl's to arbitrate according to the AAA Arbitration Agreement with Petitioners, including compliance with AAA's rules.

### 1. The Parties Entered into a Valid Arbitration Agreement.

There can be no question that the parties entered into a valid arbitration agreement. Petitioners each made purchases from Kohl's through its website, kohls.com, during the period

beginning on November 3, 2020, and ending on May 21, 2023. *See* Bernal Decl. ¶ 3; Marquez Decl. ¶ 3; Juarez Decl. ¶ 3; Roa Decl. ¶ 3. Petitioners' purchases were each made pursuant to, and are governed by, the version of Kohl's terms and conditions that was in effect at the time of each purchase. During this period, Petitioners' purchases were made under the 2020 Terms or 2022 Terms—both of which include the AAA Arbitration Agreement. Each time a Petitioner made a purchase from kohls.com, a contract between the Petitioner and Kohl's was formed through a modified clickwrap agreement on Kohl's checkout page. This modified clickwrap agreement was disclosed to the Petitioner immediately below the button that the Petitioner needed to click to complete the purchase: "By placing your order, you agree to Kohl's <u>Legal Notices</u> and <u>Privacy Policy</u>." The underlined term "<u>Legal Notices</u>" in this disclosure was a hyperlink to the page on Kohl's website that contained the version of Kohl's terms and conditions that was in effect at the time of the purchase.

An arbitration agreement within a website's terms is enforceable if a reasonable person would realize that he or she was assenting to those terms by completing making a purchase on the website. *See Domer v. Menard, Inc.*, No. 22-cv-444, 2023 WL 4762593, at *2 (W.D. Wis. July 26, 2023) (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016)). Kohl's modified clickwrap agreement satisfies this standard because Kohl's checkout page adequately disclosed to Petitioners that their purchases would be made pursuant to, and would be governed by, the version of Kohl's terms and conditions that was in effect at the time of each purchase, including the AAA Arbitration Agreement. By making purchases on kohls.com during the period beginning on November 3, 2020, and ending on May 21, 2023, Petitioners and Kohl's entered into a valid agreement that "[a]ll [d]isputes" arising from Petitioners' purchases would be resolved through arbitration with the AAA, and under AAA's rules. 2020 Terms at 3–4; 2022 Terms at 3–4.

Kohl's has enforced its terms and conditions against customers in the past by arguing that a similar modified clickwrap agreement is valid. *See, e.g.*, Mot. to Deny Class Certification, No. 19-cv-01866 (E.D. Mo. Sept. 23, 2020), ECF No. 66, at 6–8 (arguing Kohl's modified clickwrap

11

created a valid contract with customer); *Hennessey v. Kohl's Corp.*, 571 F. Supp. 3d 1060, 1070–71 (E.D. Mo. 2021) (finding Kohl's modified clickwrap created a valid contract with customer). Thus, Kohl's is precluded from now arguing that no contract with Petitioners was formed through the modified clickwrap on Kohl's checkout page.

### 2. The AAA Arbitration Agreement Covers the Present Disputes.

There is also no question that the AAA Arbitration Agreement covers the disputes between Petitioners and Kohl's. The text of the AAA Arbitration Agreement plainly states: "This Arbitration Agreement Applies to all 'Disputes.'" 2020 Terms at 3–4; 2022 Terms at 3–4. "Disputes" are defined to include claims that "in any way relate to or arise out of any aspect of the relationship between you and Kohl's, whether based in contract, tort, statute, fraud, misrepresentation, advertising claims, or any other legal theory . . . ." 2020 Terms at 4; 2022 Terms at 4. Petitioners demanded arbitration according to the terms of the AAA Arbitration Agreement because Kohl's employs false and deceptive marketing schemes that induced Petitioners to purchase Kohl's products at phony discounts.

### 3. The Arbitration Agreement Incorporates AAA's Rules.

The AAA Arbitration Agreement expressly incorporates AAA's rules. In the AAA Arbitration Agreement, Kohl's specified that Petitioners' arbitrations would proceed with "the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules as applicable." 2020 Terms at 4; 2022 Terms at 4. Incorporation of AAA's rules renders those rules a part of the parties' agreement.[1] By agreeing to arbitrate with AAA under AAA's rules, Kohl's committed itself to performing the necessary steps to make that happen.

---

[1] Thus, where an arbitration agreement "incorporate[s] the AAA Rules, which provide that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim,'" "[i]ncorporating the AAA Rules constitutes 'clear and unmistakable evidence' that the parties intended that questions of arbitrability be delegated to the arbitrator." *Greder v. Uber Techs., Inc.*, No. 18-CV-3171-PSG-GJS, 2018 WL 10017490, at *5 (C.D. Cal. Sept. 5, 2018); *see also* AAA's Consumer Arbitration Rules at 17 (Rule 14) (setting forth the delegation clause). To the extent Kohl's disputes that Petitioners entered into valid arbitration agreements with Kohl's that cover their disputes, those are questions of arbitrability that the parties have already delegated to arbitrators to decide under the AAA Arbitration Agreement.

This includes, at minimum, Kohl's registering its arbitration clause in AAA's Consumer Clause Registry and paying the associated fees. *See* AAA's Consumer Arbitration Rules at 16–17 (Rule 12) (requiring businesses to register consumer arbitration clauses that provide for arbitration with AAA).

### B. Kohl's Refuses to Comply with the AAA Arbitration Agreement and AAA's Rules.

Under Rule 12 of AAA's Consumer Arbitration Rules, Kohl's should have registered the AAA Arbitration Agreement with the AAA "at least 30 days before [its] planned effective date" by providing AAA with a copy of the AAA Arbitration Agreement for AAA's review and paying a "nonrefundable review and [r]egistry fee." AAA's Consumer Arbitration Rules at 16–17 (Rule 12). Kohl's failed to do so. Because Kohl's failed to register the AAA Arbitration Agreement before Petitioners filed their Demands for Arbitration, AAA could only proceed with administering their arbitrations if it conducted an "expedited review" of the AAA Arbitration Agreement. *See id*. To complete this "expedited review," the AAA's Consumer Arbitration Rules required Kohl's to pay a "fee for expedited review," along with paying the "nonrefundable review and [r]egistry fee" and other applicable filing fees. *See id.* AAA reiterated these requirements to Kohl's in a letter to the parties on June 7, 2023, requesting that Kohl's register its clause by June 14, 2023, and "advise the AAA of its intention to comply with the AAA's Consumer [Arbitration] Rules and [Consumer Due Process] Protocol." *See* June 7, 2023 AAA Letter. Kohl's refused to do so. *See* June 20, 2023 AAA Letter.

As a result of Kohl's refusal to comply with AAA's Consumer Arbitration Rules and AAA's Consumer Due Process Protocol—including by refusing to register the AAA Arbitration Agreement and refusing to pay the review and registry fee, expedited review fee, and other filings fees—AAA administratively closed Petitioners' arbitrations against Kohl's on June 20, 2023. *See* June 20, 2023 AAA Letter.

Kohl's cannot dispute that it prevented Petitioners' arbitrations from proceeding with AAA by refusing to comply with the AAA Arbitration Agreement and AAA's rules. AAA explicitly told the parties that Kohl's refusal to comply with the AAA Arbitration Agreement and AAA's rules was the reason why AAA administratively closed Petitioners' arbitrations. AAA wrote on June 7, 2023:

> Prior to the filing of these arbitrations, ***Kohl's failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration*** . . . . ***Due to Kohl's prior non-compliance***, in order for the AAA to consider accepting these consumer disputes, as well as disputes going forward, ***Kohl's must advise the AAA of its intention to comply with the AAA's Consumer Rules and Protocol***.

June 7, 2023 AAA Letter (emphasis added). Then, on June 20, 2023, AAA wrote:

> Please note that because ***Kohl's has confirmed they will not register their consumer arbitration agreement on the Consumer Clause Registry*** and because ***Kohl's has previously not complied with our Consumer Arbitration Rules ("Rules") and Consumer Due Process Protocol ("Protocol")***, we decline to administer the cases filed by claimants against Kohl's

June 20, 2023 AAA Letter (emphasis added).

Kohl's conduct violated the AAA Arbitration Agreement in at least two ways.

*First*, Kohl's violated the very rules it adopted in its AAA Arbitration Agreement. Kohl's drafted the AAA Arbitration Agreement to specify an arbitration administered by AAA: "The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules as applicable." 2020 Terms at 4; 2022 Terms at 4. Rule 12 of AAA's Consumer Arbitration Rules required Kohl's to submit the AAA Arbitration Agreement to AAA for review and registry before its effective date. But when Petitioners filed their Demands for Arbitration, which was more than two years after the AAA Arbitration Agreement went into effect, Kohl's had still never complied with the AAA's review and registry requirement. As a result of Kohl's failure to comply with AAA's ex ante review and registration requirement, Rule 12 of AAA's Consumer Arbitration Rules required that Kohl's pay

the fee for an "expedited review" of the AAA Arbitration Agreement, as well as the "Registry fee," together with "any other filing fees," so that AAA could proceed to an expedited review and registry of the AAA Arbitration Agreement. Kohl's refused to comply with any of these requirements. *See* June 20, 2023 AAA Letter. By refusing to comply with the requirements of Rule 12 of AAA's Consumer Arbitration Rules, Kohl's breached the AAA Arbitration Agreement it entered into with Petitioners.

*Second*, Kohl's failure to initiate arbitration under AAA's rules by refusing to pay the required costs of arbitration is a flagrant violation of the AAA Arbitration Agreement. Where a party refuses to pay filing fees charged by the arbitral forum designated under its arbitration agreement, it breaches that agreement. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–11 (9th Cir. 2005) (finding "Dillard's clearly breached the arbitration agreement" by failing to pay its "share of the filing fee"); *Sink v. Aden Enters., Inc.,* 352 F.3d 1197, 1201 (9th Cir. 2003) ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration."); *Pre-Paid Legal Servs. v. Cahill,* 786 F.3d 1287, 20 1297 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment); *Wallrich v. Samsung Elecs. Am., Inc.*, No. 22 C 5506, 2023 WL 5935024, at *10 (N.D. Ill. Sept. 12, 2023) *appeal docketed*, No. 23-2842 (7th Cir. Sept. 25, 2023), ECF No. 1-2 (finding "Samsung's refusal to pay the AAA's fees for each individual claimant constitutes a breach of its own arbitration agreement"). Kohl's cannot avoid costs that are the direct—and entirely foreseeable—consequence of requiring each Petitioner to bring claims individually in a forum that charges separate filing fees for each arbitration. The FAA entitles Petitioners to relief for Kohl's unambiguous breach of contract.

Further, the FAA is designed not only to enforce general agreements to arbitrate, but also to protect contractual designations of forum and procedure. "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018). "Indeed, we have often observed that the Arbitration Act requires courts 'rigorously'

15

to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Id.* This Court should compel Kohl's to arbitrate under the terms it drafted, which requires submitting to the administration of AAA, registering its arbitration clause on the AAA Consumer Clause Registry, and paying all requisite fees.

### C. The 2023 Terms Do Not Govern.

To the extent Kohl's argues that Petitioners' claims are governed by the 2023 Terms instead of the 2020 Terms or the 2022 Terms (which both include the AAA Arbitration Agreement), its argument is meritless for three reasons.

*First*, Petitioners have not assented to new terms governing their ongoing disputes with Kohl's. It goes without saying that the mutual manifestation of assent is essential to the formation of any contract. *See, e.g.*, *Sgouros*, 817 F.3d at 1034 ("Formation of a contract requires mutual assent in virtually all jurisdictions."); *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014) (observing that mutual manifestation of assent is "is the touchstone of contract"); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (noting that mutual manifestation of assent requirement "applies with particular force to provisions for arbitration"). Petitioners each assented to the AAA Arbitration Agreement and made purchases under that agreement. Then, they each served a Notice of Dispute on Kohl's and proceeded all the way through a pre-dispute mediation in accordance with the AAA Arbitration Agreement. Petitioners then filed demands for arbitration with AAA under the AAA Arbitration Agreement on the *same day* that Kohl's posted the new 2023 Terms to its website, but *before* any Petitioner had made any new purchases or otherwise agreed to these new terms.

The "'first principle that underscores all [Supreme Court] arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)). Here, Petitioners' lack of consent to Kohl's new 2023 Terms is clear and dispositive. While both parties consented to the

16

2020 Terms and 2022 Terms, Petitioners never consented to the 2023 Terms—therefore, the former control.

*Second*, Kohl's cannot characterize the 2023 Terms as mere modifications of the 2022 Terms (which included the AAA Arbitration Agreement) because unilateral changes to arbitration clauses cannot retroactively govern *known* and *accrued* claims. Many contracts purport to give the company the right to unilaterally modify it at any point, but if that power was literal the contract would be illusory—binding the company to do nothing at all. *See, e.g.*, *24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1214 (1998). The reason such contracts are not illusory is that the modification clause "carries with it the duty to exercise that right fairly and in good faith," and, "[s]o construed, the modification provision does not render the contract illusory." *Id.*

As applied to arbitration clauses, the "implied covenant" "prevents [a party] from modifying an arbitration agreement once a claim has accrued or become known to it." *Peng v. First Republic Bank,* 219 Cal. App. 4th 1462, 1474 (2013). That is because "an arbitration contract containing a modification provision is illusory"—and, thus, unenforceable—"if . . . a contract change[] applies to claims that have accrued or are known." *Peleg v. Neiman Marcus Grp., Inc.,* 204 Cal. App. 4th 1425, 1433 (2012). This rule prevents the drafter from "amend[ing] the contract in anticipation of a specific claim, altering the arbitration process to the [plaintiff's] detriment and making it more likely the [defendant] would prevail." *Id.*; *see also Pruett v. WESTconsin Credit Union*, No. 2022AP887, 2023 WL 6991328, at *12–13 (Wis. Ct. App. Oct. 24, 2023) (concluding defendant failed to act in good faith by exercising its discretionary power under unilateral modification provision to "protect [itself] retroactively from alleged wrongdoing"). That is exactly what Kohl's has attempted to do here, and exactly what the law forbids. Kohl's unilateral amendment falls outside the scope of permissible modifications—therefore, the prior contract controls.

Kohl's cannot be surprised that its purported modifications cannot retroactively govern known and accrued claims. After all, it has argued just that in the past. In another case where it perceived the modification to advantage claimants, Kohl's asserted—correctly—that an October

17

15, 2010 modification "only affects claims that accrue *after* October 15, 2010. Because [plaintiffs'] claims stem from the opening of their accounts and their enrollment in [a subscription service], which occurred well before October 15, 2010, the arbitration agreement in force at that time applies." Mot. to Compel Arbitration, *Gordon v. Kohl's Dep't Stores, Inc.*, No. 15-cv-00730 (E.D. Pa. May 19, 2015), ECF No. 27-2 at 9 n.5; *see also Gordon v. Kohl's Dep't Stores, Inc.*, 119 F. Supp. 3d 356, 362 (E.D. Pa. 2015) (accepting Kohl's argument that what matters "is when the [p]laintiffs' claims accrued," but finding the record unclear on that point).

*Third*, even if unilateral modification were permissible, Kohl's did not timely notify Petitioners of its sudden change. Indeed, Petitioners received *no* notice of the new Terms until Kohl's sent them an email in *June*. *See* Bernal Decl. ¶ 5; Marquez Decl. ¶ 5; Juarez Decl. ¶ 5; Roa Decl. ¶ 5. That is a full three to four weeks *after* Petitioners filed their Demands for Arbitration with AAA—and six months *after* Petitioners served their Notices of Dispute on Kohl's which initiated the same AAA arbitration process they now ask this Court to compel.

Moreover, the 2023 Terms are unconscionable and therefore unenforceable regardless. Because Kohl's imposed them during negotiations over known and accrued claims, they are procedurally unconscionable. *See Szetela v. Discover Bank,* 97 Cal. App. 4th 1094, 1100 (2002); *Wisconsin Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 533–37 (2006). And they are substantively unconscionable since Kohl's designed them to burden individuals seeking to vindicate their rights through the pre-dispute negotiation process requiring physical mail and signatures, the demand filing process requiring physical mail and signatures, the opt-out process requiring physical mail and signatures, and the multiple rounds of bellwether arbitrations that delay claims indefinitely. *See* 2023 Terms at 3–7; *see also Heckman v. Live Nation Entertainment, Inc.*, No. 22-cv-00047, 2023 WL 5505999, at *15–27 (C.D. Cal. Aug. 10, 2023) (holding substantively unconscionable various aspects of a mass arbitration procedure); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040–44 (N.D. Cal. 2022) (holding mass arbitration procedures that caused significant delay were substantively unconscionable).

18

**D.     Petitioners Are Entitled to Sanctions Under California's Senate Bill 707 Because Kohl's Failed to Arbitrate Claims Under the Terms It Imposed.**

In addition to compelling arbitration before AAA, the Court should also award substantive remedies to Petitioners for Kohl's bad faith conduct.  Every Petitioner is a resident of California who was entitled "to have the arbitration conducted . . . in the county where you live."  2020 Terms at 4; 2022 Terms at 4.  And in making their arbitration demands, Petitioners designated California as the locale state for their arbitrations.  *See* Pak Decl. ¶ 8.  The California Legislature has codified remedies for a breach of an agreement to arbitrate in California.  *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019) (codified at various sections of Cal. Civ. Proc. Code, pt. 3, tit. 9, including Cal. Civ. Proc. Code § 1281.97).

Specifically, Section 1281.97 provides:

> (a) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement . . . .

> (b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may . . .

> (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

Cal. Civ. Proc. Code § 1281.97.

When it enacted the above language, the Legislature explained the misconduct it intended to sanction:

> A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights.  This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.

S.B. 707 § (1)(d).  The California Senate Judiciary Committee further explained:

19

> Companies have been using arbitration agreements for years to prohibit employees and consumers from having their claims heard in court or as a class action. With no other recourse left to adjudicate their claims, employees have begun filing individual arbitration claims, with one employer having over 12,000 individual claims filed against it. Some employers have been refusing to pay fees and costs required to initiate arbitration, effectively placing their employees in a procedural limbo. This bill is intended to affirm that these practices constitute material breach of an employment or consumer arbitration agreement and provide procedures for employees or consumers to pursue in order to have their claims heard in the event of such a breach.

Dkt. 55-16 at 1.

Kohl's behavior is a classic example of what the California Legislature intended to prohibit under Section 1281.97 and triggers mandatory sanctions under that provision. Kohl's is the "drafting party," since it is "the company or business that included a predispute arbitration provision in a contract with a consumer." Cal. Civ. Proc. Code § 1280(e). Petitioners brought arbitrations under the AAA Arbitration Agreement against Kohl's in which "the rules of the arbitration administrator," here AAA, require Kohl's to "pay certain fees and costs before the arbitration can proceed." Cal. Civ. Proc. Code § 1281.97(a). And even though Petitioners paid their fees, Kohl's paid none of its required fees. *See* June 20, 2023 AAA Letter. Accordingly, Petitioners here, as "consumer[s,] may . . . [c]ompel arbitration in which the drafting party *shall pay reasonable attorney's fees and costs* related to the arbitration." Cal. Civ. Proc. Code § 1281.97(b)(2).

The remedies under Section 1281.97 are mandatory. *See* § 1281.97 (where consumer compels arbitration under provision, "the drafting party *shall* pay reasonable attorney's fees and costs related to the arbitration") (emphasis added)). "The language of section 1281.97 is unambiguous" and "indicates the Legislature intended the statute to be strictly applied." *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 776 (2022). Furthermore, Section 1281.99 reiterates the mandatory nature of those sanctions—"[t]he court *shall* impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of Section 1281.97" (Cal. Civ. Proc. Code § 1281.99(a) (emphasis added))—and adds that the court

"may" also order additional, nonmonetary sanctions (Cal. Civ. Proc. Code § 1281.99(b)). "Given the Legislature's express grant of discretion as to imposition of nonmonetary sanctions, we may presume the Legislature did not intend implicitly to grant that same discretion on the issues of material breach and imposition of monetary sanctions." *Espinoza*, 83 Cal. App. 5th at 776.

Courts have repeatedly applied Senate Bill 707 to impose mandatory monetary sanctions in cases like these. For example, in *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021), Postmates drivers filed individual arbitrations against Postmates with AAA, and "AAA confirmed that Postmates had failed to pay its share of the initial filing fees necessary to commence 10,256 of the cases filed on February 15, 2020, and administratively closed those cases." *Postmates*, 2021 WL 540155, at *4. The Postmates drivers petitioned to compel arbitration. *Id.* The court in *Postmates* compelled arbitration pursuant to the arbitration agreement and specifically granted the drivers' "request for reasonable attorneys' fees and costs related to the arbitration proceedings" that would follow. *Id.* at *13.

The court in *Hagan v. Park Miller LLC*, No. 20-cv-06818, 2020 WL 7319357 (N.D. Cal. Dec. 11, 2020), compelled arbitration and awarded sanctions under these exact circumstances. There, individual investors filed an arbitration with AAA against their investment firm. *Hagan*, 2020 WL 7319357, at *1. After the investment firm refused to pay the review and registry fees required by the AAA under its Consumer Arbitration Rules, AAA declined to administer the arbitration. The investors then petitioned the court for an order compelling the investment firm to arbitrate. *Id.* at *2. The *Hagan* court compelled arbitration, holding that the investment firm "must submit to arbitration under the AAA's consumer rules," and awarding the investors "reasonable attorneys' fees and costs relating to the arbitration." *Id.* at *4. Later, the investment firm attempted to argue that the S.B. 707 sanctions previously awarded by the court were limited to "the fees and costs incurred by [the investors] for having to initiate arbitration due to [the investment firm's] failure to pay the review and registry fees required by AAA under the Consumer Rules." *Hagan v. Park Miller LLC*, No. 20-cv-06818, 2021 WL 1688347, at *2 (N.D. Cal. Apr. 29, 2021). The *Hagan* court rejected that proposed limitation, holding that the investment firm "must pay all of

the reasonable attorneys' fees and costs for the entire arbitration . . . , not some lesser or other amount resulting from [the breaching party's] failure to pay the required arbitration fees." *Id.*

Kohl's may argue that it has not failed to pay required arbitration fees because AAA declined to administer the Petitioners' arbitrations, but that is backwards. AAA declined to administer the arbitrations *because* Kohl's refused, in violation of AAA's rules and Kohl's own contract it drafted (the AAA Arbitration Agreement), to pay the required fees to register its clause and commence Petitioners' arbitrations. Nor can Kohl's argue that AAA's refusal was solely because of its refusal to register its arbitration clause, as opposed to its refusal to pay the required fees. First, registering an arbitration clause with AAA itself required Kohl's to pay a fee, which it refused to pay. See *Consumer Rules of Arbitration*, American Arbitration Association, Rule 12. That failure itself satisfies the statutory element of a drafting party failing "to pay certain fees and costs before the arbitration can proceed." Cal. Civ. Proc. Code § 1281.97. Second, the fact that Kohl's *also* violated its contract and AAA's rules in *other* ways (*e.g.*, by defying the authority of AAA to review the rules) cannot improve Kohl's position under the statute. The statute requires sanctions wherever a drafting party fails to pay fees required to move the arbitration forward. It does not require that this be the *only* violation of the arbitration contract. And for good reason; a contrary approach would perversely allow drafting parties to continue with the bad faith tactics the law was meant to step by doubling down and repudiating other rules at the same time it refuses to pay fees.

Despite requiring consumers to arbitrate with AAA for *years*, Kohl's refused to proceed to arbitration when Petitioners filed valid demands. In the face of that recalcitrance, AAA was forced to close the cases: "because Kohl's has confirmed they *will not* register their consumer arbitration agreement on the Consumer Clause Registry and because Kohl's has previously *not complied* with our Consumer Arbitration Rules ('Rules') and Consumer Due Process Protocol ('Protocol'), we decline to administer the cases filed by claimants against Kohl's." June 20, 2023 AAA Letter (emphasis added). AAA has no judicial power with which to force Kohl's to arbitrate under the rules it previously agreed to—that is for this Court. *See* June 7, 2023 AAA Letter (noting that, in

22

light of Kohl's refusal to arbitrate, AAA is "unable" to administer the arbitration "absent a court order").

IV.    **CONCLUSION**

Courts do not look kindly upon a company that "faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause [even if it] never expected that so many would actually seek arbitration." *Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020).

Kohl's bad-faith strategy of breaching the contract it drafted as a calculated response to Petitioners' attempts to comply with it is precisely the sort of conduct that Senate Bill 707 is intended to sanction.  This Court should apply the well-settled principles of the FAA and the sound policy and remedial scheme of Senate Bill 707.  It should compel Kohl's to arbitration before AAA under AAA's Consumer Arbitration Rules, and it should order Kohl's to pay Petitioners' attorney's fees and costs in each of the resulting arbitrations.

Dated:  December 1, 2023        By:  _/s/ Albert Y. Pak_____

**KELLER POSTMAN LLC**
Albert Y. Pak
 _albert.pak@kellerpostman.com_
Noah Heinz
 _noah.heinz@kellerpostman.com_
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone:  202.918.1123

Ethan H. Ames
 _ethan.ames@kellerpostman.com_
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone:  312.741.5220

**KITNER WOODWARD PLLC**
Martin Woodward
 _martin@kitnerwoodward.com_
13101 Preston Road, Suite 110
Dallas, TX 75240
Telephone:  214.443.4300

_Attorneys for Petitioners_