UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANA BERNAL, AMIEE MARQUEZ,
PATRICIA JUAREZ, and CLARA ROA,                Case No. 2:23-cv-01542-LA

        Petitioners,

   v.

KOHL'S CORPORATION and KOHL'S INC.,

        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'
AMENDED PETITION AND MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................... 3

I.     THE PARTIES ......................................................................................... 3

II.    PETITIONERS ARE JUST A SMALL PART OF THEIR COUNSEL'S MASS ARBITRATION SCHEME AGAINST KOHL'S ......................................... 4

    A.    Overview of Petitioners' Counsel's Mass Arbitration Scheme ........................... 4

    B.    Petitioners' Counsel Solicited "Clients" To Extort Kohl's .................................. 5

    C.    Petitioners Send Kohl's Purported "Notices of Dispute" ...................... 6

    D.    Kohl's Updates its Arbitration Agreement ........................................ 8

    E.    Petitioners Respond To The 2023 Terms By Attempting To File Arbitration Demands Against Kohl's, Which The AAA Declines to Administer ........................................................................... 10

    F.    Instead of Arbitrating With NAM, Or Pursuing Claims In Court, Petitioners' Counsel Filed This Petition Seeking To Open The Floodgates For A Mass Arbitration Filing Before AAA ........................................ 11

III.   PETITIONERS AGREED TO ARBITRATE AND CAN PROCEED TO ARBITRATION BEFORE NAM UNDER THE 2023 TERMS ................................... 13

ARGUMENT ........................................................................................ 14

I.     PETITIONERS ARE NOT ENTITLED TO RELIEF UNDER THE FAA .................... 14

    A.    Kohl's Agrees To Arbitrate Petitioners' Claims Before NAM; Petitioners Are Therefore Not "Aggrieved" By A "Failure, Refusal, or Neglect" to Arbitrate ................................................................................. 14

    B.    This Court Lacks Authority To Compel Kohl's To Register An Arbitration Agreement With The AAA .................................................................... 16

    C.    Petitioners Improperly Ask This Court To Controvert The Well-Settled Legal Principle That Courts Should Not Override An Arbitral Body's Interpretation Of Its Own Rules ................................................ 17

    D.    Petitioners Are Not Entitled To The Equitable Relief They Seek Because They Have Adequate Remedies At Law ............................................... 19

II.    PETITIONERS' BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING PRECLUDES ENFORCEMENT OF THE SUPERSEDED TERMS .......... 20

III.   PETITIONERS' REQUEST FOR SANCTIONS UNDER CALIFORNIA'S SENATE BILL 707 IS MERITLESS AND SHOULD BE DENIED ......................... 22

IV.     THE PETITION AND MOTION SHOULD BE DENIED BECAUSE
        PETITIONERS CAN ARBITRATE BEFORE NAM AND ARE BOUND BY
        THE 2023 TERMS ........................................................................................... 24

        A.      The 2023 Terms, Not The Superseded Terms, Govern Petitioners' Claims ....... 24

        B.      Petitioners' Perfunctory Argument That The 2023 Terms Are
                Substantively Unconscionable Lacks Merit........................................................ 27

CONCLUSION ..................................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) ................................................................................................................17

*Allen v. Horter Inv. Mgmt., LLC*,
No. 1:20-cv-11, 2020 WL 5814498 (S.D. Ohio Sept. 30, 2020) ...........................15

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017).....................................................................27

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
88 F.4th 1355 (11th Cir. 2023) ...............................................................................14

*Beidel v. Sideline Software, Inc.*,
2013 WI 56, 348 Wis. 2d 360, 842 N.W.2d 240 (2013).........................................20

*Belyea v. GreenSky, Inc.*,
637 F. Supp. 3d 745 (N.D. Cal. 2022) ....................................................................23

*BG Grp., PLC v. Rep. of Argentina*,
572 U.S. 25 (2014)..................................................................................................18

*Broadcort Cap. Corp. v. Dutcher*,
859 F. Supp. 1517 (S.D.N.Y. 1994)........................................................................15

*Chayka v. Santini*,
47 Wis. 2d 102, 176 N.W.2d 561 (1970).................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................................................17

*Chowning v. Kohl's Department Stores, et al.*,
No. 2:15-cv-08673 (C.D. Cal.) .................................................................................4

*Cont'l Bank, N.A. v. Everett*,
964 F.2d 701 (7th Cir. 1992) ..................................................................................20

*Cortez Gomez et al. v. Kohl's Inc. et al.*,
No. 3:23-cv-00678 (W.D. Wis.) ...........................................................................2, 3

*Cota v. Art Brand Studios, LLC*,
No. 21-CV-1519, 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021)............................18

iii

*Crawford v. Talk Am., Inc.*,
  No. 05-CV-0180, 2005 WL 2465909 (S.D. Ill. Oct. 6, 2005) ................................25

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*,
  588 F.3d 884 (5th Cir. 2009) ................................................................17

*Dean Witter Reynolds Inc. v. Prouse*,
  831 F. Supp. 328 (S.D.N.Y. 1993) .........................................................15

*Delonge v. Time Warner Cable Bus. LLC*,
  No. 13-CV-0988, 2014 WL 3890766 (E.D. Wis. Aug. 6, 2014) ......................24, 25

*Deputy v. Lehman Bros.*,
  345 F.3d 494 (7th Cir. 2003) ................................................................27

*Donald L. Delebo, D.D.S. v. Cmty. Dental*,
  299 Wis. 2d 783, 728 N.W.2d 374 (Ct. App. 2007) ....................................20

*Eliasieh v. Legally Mine, LLC*,
  No. 18-cv-03622, 2020 WL 1929244 (N.D. Cal. Apr. 21, 2020)..........................19

*Espinoza v. Superior Ct.*,
  83 Cal. App. 5th 761 (2022) ................................................................23

*In re Facebook Biometric Information Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................26

*Garcia v. Citibank, N.A.*,
  No. 18-cv-9413, 2019 WL 2902499 (C.D. Cal. Feb. 13, 2019) ..........................29

*Hennessey v. Kohl's Corp., et al.*,
  No. 4:19-cv-01866 (E.D. Mo.).................................................................4

*Hinojos, et al. v. Kohl's Corp., et al.*,
  No. 2:10-cv-07590 (C.D. Cal.) ...............................................................4

*Home Valu, Inc. v. Pep Boys—Manny, Moe and Jack of Del., Inc.*,
  213 F.3d 960 (7th Cir. 2000) ................................................................20

*Hooters of America, Inc. v. Phillips*,
  173 F.3d 933 (4th Cir. 1999) ................................................................20

*Klein v. Verizon Communications, Inc.*,
  No. 1:12-cv-00757, 2017 WL 5071306 (E.D. Va. Aug. 9, 2017) ........................25

*Lee v. Citigroup Corp. Holdings, Inc.*,
  No. 22-cv-02718, 2023 WL 6132959 (N.D. Cal. Aug. 29, 2023) ........................23

iv

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) ................................................................................................26

*Malone v. Hoogland Foods, LLC*,
    No. 19-cv-891, 2020 WL 6158201 (W.D. Wis. Oct. 21, 2020) ...............................24

*Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    695 F. Supp. 756 (S.D.N.Y. 1988) ........................................................................17

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ...............................................................................17

*Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
    206 Wis. 2d 158, 557 N.W.2d 67 (1996).................................................................20

*Morales v. Midland Credit Mgmt., Inc.*,
    No. 19-CV-356585, slip op. (Cal. Super. Ct. Jun. 3, 2022)...................................22

*Murillo, et al. v. Kohl's Corp, et al.*,
    No. 2:16-cv-00196 (E.D. Wis.)...............................................................................4

*Nicosia v. Amazon.com, Inc.*,
    No. 14-CV-4513, 2017 WL 10111078, at *10-11 (E.D.N.Y. Aug. 18, 2017),
    *report and recommendation adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019),
    *aff'd*, 815 F. App'x 612 (2d Cir. 2020) ...................................................................27

*PaineWebber Inc. v. Faragalli*,
    61 F.3d 1063 (3d Cir. 1995), *abrogated on other grounds*, *Morgan v.*
    *Sundance, Inc.*, 596 U.S. 411 (2022) .....................................................................15

*Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ......................................................................26

*Peters v. Amazon Servs., LLC*,
    669 F. App'x 487 (9th Cir. 2016) ...........................................................................26

*Pincaro v. Glassdoor, Inc.*,
    No. 16-CV-6870, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017).....................24, 25

*Richmond v. Russ Darrow Chrysler LLC*,
    No. 18-CV-128, 2018 WL 3978124 (E.D. Wis. Aug. 20, 2018)............................27

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) .................................................................................19

*Steffanie A. v. Gold Club Tampa, Inc.*,
    No. 19-cv-3097-T-33, 2020 WL 4201948 (M.D. Fla. July 22, 2020)...............18, 19

*Tickanen v. Harris & Harris, Ltd.*,
    461 F. Supp. 2d 863 (E.D. Wis. 2006) .................................................................25

*Tinder v. Pinkerton Sec.*,
    305 F.3d 728 (7th Cir. 2002) .............................................................................24

*Vital Pharms. Inc. v. PepsiCo Inc.*,
    No. CV-22-00591, 2022 WL 2176528 (D. Ariz. June 16, 2022) ..........................18

*Wis. Auto Title Loans, Inc. v. Jones*,
    2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155 (2006) .......................................27

**Statutes**

Cal. Code Civ. P. § 1281.97 ..........................................................................................23

Federal Arbitration Act ........................................................................................ *passim*

**Other Authorities**

AAA Consumer Arbitration Rules, R-1(d) ....................................................................11

Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass
    Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 2023) ...........1, 4, 5

Defendants Kohl's Corporation and Kohl's, Inc. (collectively, "Kohl's") respectfully submit this memorandum of law in opposition to Petitioners' amended petition for order compelling arbitration (Dkt. 54, the "Petition"), and motion to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), and for sanctions under Section 1281.97 of the California Code of Civil Procedure ("SB 707") (Dkt. 61, the "Motion"). For the reasons set forth below, Petitioners' Petition and Motion should be denied.

## PRELIMINARY STATEMENT

This dispute is not simply about four Petitioners seeking to compel individual arbitrations with Kohl's. Petitioners are just four of 54,495 individuals that their Counsel purport to represent, all of whom attempted to file substantively identical arbitration demands against Kohl's with the American Arbitration Association ("AAA"), between May 22 and 26, 2023. (Dkt. 55-13.) Petitioners' arbitration demands and the instant Petition are part of Petitioners' Counsel's larger "mass arbitration" scheme against Kohl's.[1] Petitioner's Counsel are among the leaders of the mass arbitration "avalanche" that has targeted companies throughout the country over the past few years, and has been criticized as a "coercive gambit" that is "paved with abusive practices." Here, they seek to threaten Kohl's with the prospect of tens of millions of dollars in arbitration fees in order to extract a multi-million dollar settlement that is untethered from the merits of any Petitioners' (or any of their other clients') claims.[2]

---

[1] Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* at 3 (Feb. 2023) ("*Mass Arbitration Shakedown*"), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf.

[2] Petitioners' Counsel's mass arbitration scheme is not limited to Petitioners and the other claimants on whose behalf they have attempted to file arbitrations against Kohl's before the AAA. In October 2023, after filing this Petition, Petitioners' Counsel again placed advertisements indiscriminately soliciting consumers that made in-store purchases from Kohl's. (Declaration of Lauri A. Mazzuchetti ("Mazzuchetti Decl."), Ex. A.) Petitioners' Counsel has also demonstrated the applicability of the 2023 Terms by, in December 2023, serving Notices of Dispute under the

Kohl's operative arbitration agreement with its customers, as set forth in its May 22, 2023 Terms & Conditions ("2023 Terms") (Dkt. 55-4), calls for arbitration with National Arbitration and Mediation ("NAM"), a leading national alternative dispute resolution provider. Arbitration before NAM under the 2023 Terms is not conducive to Petitioners' Counsel's plan to leverage the AAA's arbitration fees to extract a settlement from Kohl's. The Petition therefore seeks to avoid application of the 2023 Terms and seeks relief pursuant to Kohl's Terms of Use dated November 3, 2020 (the "2020 Terms") and/or July 13, 2022 (the "2022 Terms," and together with the 2020 Terms, the "Superseded Terms"). (Dkt. 54, ¶¶ 2–3; Dkts. 55-1, 55-2.)

Petitioners' Counsel did not file the Petition to arbitrate Petitioners' individual claims— which they could do immediately, before NAM under the 2023 Terms. Instead, Petitioners' Counsel hopes to persuade this Court to compel Kohl's to register outdated and superseded arbitration agreements with the AAA. Petitioners' Counsel believe that if they can convince this Court to compel Kohl's to do so, that would open the floodgates for Petitioners' Counsel to refile all 54,495 arbitration demands with the AAA. Thus, Petitioners' Counsel and Petitioners are attempting to use this Court to facilitate their scheme to leverage the AAA's fee structure to impose on Kohl's tens of millions of dollars in arbitration fees, so that they can extract a settlement

---

2023 Terms on behalf of new claimants who are apparently satisfied to proceed before NAM. (Mazzuchetti Decl., Ex. B.)

Outside of arbitration, Petitioners' Counsel also filed a class action lawsuit against Kohl's, wherein the plaintiff they represent alleges that a class action is the superior method for adjudicating Petitioners' claims and warns against the danger of inconsistent adjudications that would result from Petitioners' individual arbitrations. *See Cortez Gomez et al. v. Kohl's Inc. et al.*, No. 3:23-cv-00678 (W.D. Wis.), Dkt. 1, ¶¶ 60–61. There, Petitioners' Counsel included allegations concerning a supposed pricing "investigation" they conducted and attempted to apply that investigation to products that the plaintiff purchased. *Id.*, at ¶¶ 28, 43–46. Petitioners' Counsel makes no similar allegation on behalf of Petitioners in their arbitration demands, this Petition, or anywhere else. While Kohl's disagrees with the conclusions drawn from that investigation and has moved to dismiss the complaint in *Cortez Gomez*, the pleading demonstrates Petitioners' Counsel's knowledge that Petitioners' allegations are insufficient.

payment from Kohl's.  An order allowing Petitioners' Counsel to refile their arbitration demands with the AAA will result in further litigation before this Court, to enjoin Petitioners' Counsel's improper filings, any improper fees invoiced by the AAA as a result of those filings, and mini-trials regarding their clients' agreements to arbitrate with Kohl's.

The Court should not permit Petitioners to further their mass arbitration scheme through an order of this Court.  The arguments in Petitioners' Motion are fundamentally flawed:

- *First*, Kohl's has not refused to arbitrate—it is ready and willing to proceed before NAM—and Petitioners therefore cannot seek relief under Section 4 of the FAA. Indeed, the relief Petitioners seek is not even authorized by the FAA. The Amended Petition and Motion improperly seek an order directing Kohl's to register an outdated arbitration agreement and pay fees that are untethered to Petitioners' claims and designed to further their mass arbitration scheme.

- *Second*, Petitioners have no basis to compel arbitration before the AAA under the Superseded Terms because they breached the arbitration agreement and the duty of good faith and fair dealing therein by perpetrating a collective, coordinated arbitration scheme designed to impose arbitration fees on Kohl's to extract a settlement—not to resolve a bona fide dispute with Kohl's.

- *Third*, Petitioners' request for sanctions under California's SB 707 is not warranted. SB 707 is not applicable, and even if it were, it is preempted by the FAA.

- *Finally*, Petitioners have no basis to compel arbitration before the AAA under the Superseded Terms, because they agreed to the 2023 Terms through continued interaction with Kohl's.  Petitioners' arguments that the 2023 Terms are not "mere modifications" of the Superseded Terms and are otherwise unconscionable are meritless.  That being said, if the Court determines that it cannot find on the present record that the 2023 Terms apply to Petitioners' claims, at a minimum, prior to granting any relief to Petitioners, under the FAA and Seventh Circuit precedent, the Court should direct the parties to conduct limited discovery and proceed to trial on which Terms apply.

Accordingly, for these reasons, set forth in further detail below, the Court should deny the Motion in its entirety.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I.  THE PARTIES

*Kohl's* is a major national retailer, founded and headquartered in Wisconsin.

3

*Petitioners' Counsel* are attorneys from the firms Keller Postman LLC ("Keller"), Lynch Carpenter LLP ("Lynch Carpenter") and Kitner Woodward PLLC ("Kitner"). Keller has been recognized as the firm that has "led" a "mass-arbitration avalanche." Pincus, *Mass Arbitration Shakedown*, at 19. Keller frequently partners with other firms to advance its mass arbitration scheme. (Mazzuchetti Decl., Ex. C, ¶ 7.) In this case, Keller partnered with attorneys from Lynch and Kitner that previously litigated similar claims to those asserted by Petitioners and Petitioners' Counsel's on behalf of tens of thousands of other clients. In each attempt, these attorneys failed to certify a class of consumers or obtain a judgment finding Kohl's practices violate the law.[3]

*Petitioners* are just four of the nearly 55,000 individuals dispersed throughout the country who Petitioners' Counsel purport to represent in their mass arbitration campaign against Kohl's.

## II. PETITIONERS ARE JUST A SMALL PART OF THEIR COUNSEL'S MASS ARBITRATION SCHEME AGAINST KOHL'S

The instant Petition is not a merely a motion to compel arbitration with respect to the claims of the four individual Petitioners. Rather, through the instant Petition, Petitioners' Counsel, with the participation of Petitioners, seeks to use this Court to advance their scheme to extort a multi-million dollar payout from Kohl's.

### A. Overview of Petitioners' Counsel's Mass Arbitration Scheme

As the U.S. Chamber of Commerce has explained in describing mass arbitration: "By simultaneously filing thousands of arbitration demands with identical claims, plaintiffs' lawyers seek to trigger an immediate obligation to pay millions of dollars in fees." Pincus, *Mass Arbitration Shakedown* at 18. "Their goal appears not to be to obtain simultaneous decisions on

---

[3] *See, e.g.*, *Hennessey v. Kohl's Corp., et al.*, No. 4:19-cv-01866 (E.D. Mo.); *Chowning v. Kohl's Department Stores, et al.*, No. 2:15-cv-08673 (C.D. Cal.) (Dkt. 44); *Hinojos, et al. v. Kohl's Corp., et al.*, No. 2:10-cv-07590 (C.D. Cal.) (Dkt. 92); *Murillo, et al. v. Kohl's Corp, et al.*, No. 2:16-cv-00196 (E.D. Wis.) (Dkt. 14).

the merits—the firms filing mass arbitrations appear to lack the resources to manage these large numbers of claims." *Id.* "Rather, the goal appears to be to use the threat of a huge fee payment to force companies to settle the claims en masse, regardless of the underlying merits." *Id.* In May 2020, Keller boasted that over the course of less than two years, their firm secured settlements totaling over $180 million by exploiting this tactic. (Mazzuchetti Decl., Ex. C, ¶ 14.)

Putative mass arbitration clients typically respond to an eye-catching solicitation (most commonly that they see online), fill out a short questionnaire (again, most commonly found online), and then are instantly counted as a client and potential claimant. Claimants' lawyers typically perform little or no independent diligence to validate whether their clients have provided them with accurate information or have any basis to make non-frivolous claims.

### B. Petitioners' Counsel Solicited "Clients" To Extort Kohl's

Here, by using internet advertising and solicitations, Petitioners' Counsel have identified nearly 55,000 purported "claimants" to assert claims against Kohl's relating to alleged "false discounts" from Kohl's "Original" and "Regular" prices, without regard to whether those clients have any genuine claims against Kohl's. Keller routinely partners with Troxel Law LLP ("Troxel")—a law firm known for its social media advertisements—to pursue mass arbitrations. Pincus, *Mass Arbitration Shakedown*, at 21 & 67 n.94. Although not co-counsel in connection with the Petition, Troxel published social media solicitations seeking claimants in connection with Petitioners' Counsel's mass arbitration efforts here and is identified as co-counsel on Petitioners' pre-arbitration notices of dispute. (*See* Mazzuchetti Decl., ¶ 6, Ex. D.)

In late 2022, Troxel began publishing misleading and confusing advertisements soliciting claimants against Kohl's. (*See id.*) Petitioners' Counsel lured in potential claimants by telling them that if they "made purchases on kohls.com [they] likely qualify to sign up for a compensation claim." (*Id.*, Ex. D.)

Not only did Petitioners' Counsel mislead consumers by broadly soliciting all of Kohl's online customers (without regard to the merits of any actual claim), but they misled consumers as to the nature of what they were signing up for. Claimants that received e-mails from Troxel thought they were participating in a "class action lawsuit against Kohl's." (*See id.*, Ex. E.) One claimant wrote to the court in a separate proceeding arising out of Petitioners' Counsel's mass arbitration scheme that Keller "is not my legal representative and has falsely represented me in this class action lawsuit." (*Id.*, Ex. F.) That letter attached correspondence between the claimant and Petitioners' Counsel that stated he "asked [Petitioners' Counsel] to withdraw [his] claim"— yet Kohl's never received any notice of withdrawal from Petitioners' Counsel. (*Id.*)[4]

## C. Petitioners Send Kohl's Purported "Notices of Dispute"

On December 22, 2022, Petitioners' Counsel—specifically, Keller—mailed 10,004 identical "Notices of Dispute" to Kohl's, threatening to bring thousands of arbitration claims over alleged "false discounts" from Kohl's ticket prices. (*See* Mazzuchetti Decl., ¶ 11, Ex. H; Dkt. 55, ¶ 7; Dkts. 55-5, 55-6, 55-7, 55-8.) These 10,004 Notices of Dispute—which included Notices of Dispute for the Petitioners—stated that each claimant purportedly purchased unidentified products advertised at unidentified discounts from Kohl's ticket prices, but that Kohl's "almost never (if ever) offers those products at the stated [ticket] prices." On April 10, 2023, Keller sent Kohl's 44,656 additional and substantively identical Notices of Dispute. (*See* Mazzuchetti Decl., ¶ 12, Ex. I.)

Each of these tens of thousands of Notices of Dispute contain the exact same words, except for the claimant's name and contact information. (*See* Dkts. 55-5, 55-6, 55-7, 55-8.) They state,

---

[4]     Shortly after Mr. Lang filed his letter, Petitioners' Counsel prepared a new letter for Mr. Lang to sign that attempted to walk back his comments. (*See* Mazzuchetti Decl., Ex. G.)

in cookie-cutter fashion, that the claimant purchased unidentified products advertised at unidentified discounts from Kohl's "Regular" or "Original" prices (collectively, "ticket prices"), but that Kohl's "almost never (if ever) offers those products at the stated [ticket] prices." (*Id.*)

Petitioners' Notices of Dispute failed to provide the information required by the arbitration agreements in the versions of Kohl's Terms & Conditions that Petitioners contend apply to their claims (the Superseded Terms, as defined above), or the current, operative 2023 Terms. Petitioners, like every other one of Petitioners' Counsel's claimants, did not describe even a single purchase with which they took issue. (*Id.*)  Nor did Petitioners (or any other claimant) provide notice of the law that they claimed was violated, saying only that "Kohl's deceptive pricing scheme violates federal and state laws, including, without conceding the applicability of Wisconsin law to this dispute, Wis. Stat. Ann. § 100.20 and related agency orders prohibiting misleading price comparisons." (*Id.*)  Nevertheless, each "Notice of Dispute" represented that each individual claimant, including Petitioners, "estimate[d] the total monetary amount in dispute to be $2,500."[5] (*Id.*)

The Notices of Dispute demonstrated Petitioners' Counsel's failure to investigate the so-called claims of their purported "clients": apparently, they did not collect information concerning even one online transaction that they claimed to be at issue.  And, in the course of attempts to resolve the dispute before an arbitration was filed, Petitioners' Counsel refused to provide information concerning specific transactions their clients claimed to be at issue. (Mazzuchetti Decl., ¶ 13.)

---

[5]     Even assuming that the 2020 or 2022 Terms apply, these "Notices of Dispute" do not satisfy the pre-arbitration notice requirements in any version of Kohl's arbitration agreement, which Petitioners described as "designed to facilitate settlement before arbitration." (Dkt. 54, ¶ 2.)  Kohl's good faith efforts to discuss resolution of these purported claims were thwarted by claimants' refusal to identify a single purchase transaction with which they took issue.

Indeed, as it turns out, Kohl's review of its records confirmed that thousands of the e-mail addresses Petitioners' Counsel provided for their clients are associated with *zero* online purchases since at least November 3, 2020, the date the first arbitration agreement Petitioners' Counsel seeks to take advantage of went into effect. (Declaration of Mary Benedum ("Benedum Decl."), ¶ 18.) Other claimants live in locations, such as Hawaii, where Kohl's does not operate any stores and to which Kohl's does not ship online purchases. (*Id.*, ¶ 19.)[6]

### D. **Kohl's Updates its Arbitration Agreement**

Before Petitioners or any of their counsel's tens of thousands of other clients attempted to file arbitrations against Kohl's with the AAA, the AAA informed Kohl's that it would not administer consumer disputes involving Kohl's. (*See* Dkt. 55-13.) On May 22, 2023, Kohl's exercised its contractual right to update the arbitration agreement and posted the 2023 Terms, which among other things, changed the arbitration providers. (Dkt. 55-4; *see also* Dkt. 54, ¶¶ 4–5.) At the same time, Kohl's also made related changes to the terms that governed Petitioners' continued enrollment in the Kohl's Rewards loyalty program (the "Rewards Agreement"). (Benedum Decl., ¶ 4, Ex. A.)

Petitioners had actual knowledge of the 2023 Terms as of May 22, 2023. Indeed, as set forth below, Petitioners filed arbitration demands the same day, after the updated Terms were posted and effective, and confirm through their Petition that their filing was motivated by a desire to avoid the 2023 Terms. Each Petitioner also received notice of the updated Terms by e-mail in June 2023. (*See* Dkts. 56, 57, 58, 59, at ¶ 5.)

---

[6]     In addition, based on searches of public records, at least some of the individuals for whom Petitioners' Counsel sent a Notice of Dispute appear to be deceased, or in active bankruptcy (such that they cannot bring a claim against Kohl's). Others were clients of Keller in a previous mass arbitration. And some claimants agreed already to release Kohl's as to the threatened claims, and in those instances, were represented by other counsel.

The 2023 Terms and the Rewards Agreement both contain an arbitration agreement requiring Petitioners to arbitrate all "Disputes" they may have with Kohl's before NAM, on an individual basis. (*See* Dkt. 55-4 at 5–8; Benedum Decl., Ex. A, at 4–8; *id.* Ex. B, at 5–9.) The definition of "Disputes" in both the 2023 Terms and updated Rewards Agreement expressly includes claims that Petitioners may bring against Kohl's, regardless of whether they arose before or after agreement to the updated Terms. (*See* Dkt. 55-4 at 5; Benedum Decl., Ex. A, at 3; *id.* Ex. B, at 3 (defining "Disputes" to include, *inter alia*, claims that "arose before you entered into these Terms of Use or out of a prior agreement with Kohl's (including, without limitation, claims relating to advertising)").)

The 2023 Terms (like the Superseded Terms) prominently informed Petitioners that shopping in Kohl's stores or browsing the Kohl's "Site" in any manner—defined to include "Kohls.com, its related subdomains and microsites, Kohl's mobile applications, and Kohls.com accessed through Kohl's kiosks and/or mobile devices"—constitutes agreement to the 2023 Terms:

> PLEASE BE ADVISED THAT SHOPPING IN OUR STORES AND USING THIS SITE IN ANY MANNER, WHETHER BY BROWSING, PARTICIPATING IN AN ONLINE ACTIVITY OR PROMOTION, OR MAKING A PURCHASE ("SERVICES"), CONSTITUTES YOUR AGREEMENT TO FOLLOW AND BE BOUND BY THESE TERMS OF USE, AS WELL AS KOHL'S PRIVACY POLICY. Any interaction you have with the Site through the use of browsers, applications, programs, or other tools, whether installed by you or a third party, shall be deemed to be your use of this Site. Kohl's reserves the right to update or modify these Terms of Use at any time, without prior notice. By using this Site following any such change, you agree to follow and be bound by the Terms of Use as modified.
> …
>
> IF, AT ANY TIME, YOU DO NOT AGREE TO OR CANNOT COMPLY WITH ANY OF THESE TERMS OF USE, YOU SHOULD NOT, AND ARE NOT ALLOWED TO, ACCESS OR USE THIS SITE OR MAKE PURCHASES IN OUR STORES, AS APPLICABLE. KOHL'S OFFERS THE SITE AND SERVICES

TO YOU CONDITIONED UPON YOUR ACCEPTANCE, WITHOUT MODIFICATION, OF THESE TERMS OF USE. YOUR USE OF THE SITE AND YOUR SHOPPING IN OUR STORES CONSTITUTES YOUR ACCEPTANCE OF THESE TERMS OF USE.

(Dkt. 55-2, at 2; *see also* Dkt. 55-1, at 2.)  Likewise, the updated Rewards Agreement prominently informed Petitioners that "updates to these Terms will be effective immediately upon posting at Kohls.com/KohlsRewardsTerms, and your continued membership in the Program constitutes your acceptance of such modifications."  (Benedum Decl., Exs. A, at 1; B at 1.)  The Rewards Agreement provided instructions for Petitioners to un-enroll from Kohl's Rewards, should they wish to not be bound by the updated Rewards Agreement.  (*Id.*, Exs. A, at 1; B at 1.)

### E.  Petitioners Respond To The 2023 Terms By Attempting To File Arbitration Demands Against Kohl's, Which The AAA Declines to Administer

Petitioners and their Counsel's scheme to extract a settlement depends on threatening Kohl's with exorbitant arbitration fees.  But filing arbitrations with NAM under the 2023 Terms would not impose the same exorbitant arbitration fees on Kohl's that would follow from mass filings with the AAA.[7]  Thus, between May 22, 2023 and May 26, 2023, in response to Kohl's posting of the 2023 Terms, Petitioners and 54,491 other "clients" of their counsel filed substantively identical arbitration demands with the AAA.  (*See* Dkt. 55-13.)

Like the Notices of Dispute that Petitioners' Counsel previously sent to Kohl's, the only differences among these tens of thousands of arbitration demands are the contact information for the respective claimants.  (*See, e.g.*, Dkts. 55-9, 55-10, 55-11, 55-12.)  However, unlike their "Notices of Dispute," Petitioners' arbitration demands claimed that Kohl's pricing practices allegedly violate *California law*.  (*See id.*, at 8.)  Again, none of the arbitration demands identified any specific purchase with which Petitioners (or any of the other claimants) took issue, but all of them sought to recover an estimated $2,500.  (*See, e.g.*, *id.*)

---

[7]  While the AAA has recently changed its applicable fee schedules for consumer arbitrations and mass arbitrations, its updated schedule remains significantly higher than NAM's fee schedule.

In June 2023, the AAA declined to administer the arbitrations filed by Petitioners' Counsel. (Dkt. 55-14.)  The AAA never issued an invoice to Kohl's arising from the 54,495 arbitration demands filed by Petitioners' Counsel—despite Petitioners' Counsel's request that the AAA issue such an invoice—and there were never any "fees triggered" by the filings, as the Petition incorrectly asserts.  (*Id.*; *see also* Mazzuchetti Decl., ¶ 14.)

### F.  Instead of Arbitrating With NAM, Or Pursuing Claims In Court, Petitioners' Counsel Filed This Petition Seeking To Open The Floodgates For A Mass Arbitration Filing Before AAA

Petitioners' Counsel, presumably frustrated that their attempted AAA filings did not trigger an invoice to Kohl's for millions of dollars in arbitration fees, did not initiate arbitration proceedings with NAM pursuant to the updated 2023 Terms.  Nor did they proceed with their purported claims in court, as the AAA's Rules permitted.[8]  Instead, Petitioners' Counsel selected six claimants from their tens of thousands of purported clients and on September 1, 2023, filed this Petition in the Central District of California, attempting to force arbitration before the AAA even though the AAA had declined to administer the cases.  (*See* Dkt. 1.)[9]

With the Petition, the original six Petitioners for the first time submitted declarations that identified specific orders by which they claim to have "purchased supposedly discounted Kohl's products."  (Dkts. 1-22 through 1-27.)  But it does not appear that Petitioners' Counsel conducted any investigation whatsoever to determine if these transactions actually involve discounts, or whether there is any support for their claimed damages of $2,500.  For example, Petitioner Bernal identified an order of "supposedly discounted Kohl's products" that is comprised entirely of high-end hair care products that were sold at their full price and excluded from both Kohl's Cash and

---

[8]  *See* AAA Consumer Arbitration Rules, R-1(d), *available at* https://adr.org/sites/default/files/Consumer%20Rules.pdf.

[9]  On October 23, 2023, Petitioners Krista Kelley and Melanie Simpkins voluntarily dismissed their claims without explanation.  (*See* Dkt. 38.)

coupons (meaning there was no advertised discount whatsoever on those sales). (Dkt. 36-4, ¶¶ 5–6.) And Petitioner Roa identified transactions where she purchased Kohl's Cares items, which are always sold for the same price and excluded from both Kohl's Cash and coupons. (*See id.*, at ¶ 11.)[10]

On September 7, 2023, the Central District of California issued an Order to Show Cause "why the Court should not dismiss the Petition for lack of subject matter jurisdiction" due to Petitioners' failure to meet the amount-in-controversy requirement for diversity jurisdiction. (Dkt. No. 18.) Petitioners' Counsel responded with a declaration stating that "[b]ased on [their] experience litigating and arbitrating cases like these, lodestar alone is likely to exceed $75,000 per individual for arbitrations that proceed to a final decision. Expert costs will push that number higher [an amount they estimated to be $100,000], as will arbitration filing fees and lodestar from litigating the motion to compel arbitration." (Dkt. 32-3, ¶ 12.)

On October 20, 2023, Kohl's moved to transfer this case to Wisconsin pursuant to the forum-selection clause in Kohl's Terms. (Dkt. 37.) Petitioners opposed transfer and argued that because Kohl's disputed the applicability of the Superseded Terms, Kohl's could not enforce the forum selection clause in those agreements. (Dkt. 39.) On November 17, 2023, the Central District of California issued an opinion finding that "Petitioners cannot pick and choose the provisions in the Terms and Conditions that they would like to rely on and those they would like to ignore," and rejected Petitioners' contentions that the forum selection clause was unconscionable. (Dkt. 52, at 4.) Accordingly, the case was transferred to this Court.

---

[10]     The transactions identified by Petitioners could not possibly state a claim for additional reasons, including because, in many instances, Petitioners paid *less than Kohl's cost* for the products purchased. (*See* Dkt. 36-4, ¶¶ 7–10.) Petitioner Kelley, who dismissed her petition without explanation, identified a transaction where she paid zero dollars. (*Id.*, ¶ 14.)

Following transfer to this Court, Petitioners filed an Amended Petition (removing Petitioners Kelley and Simpkins), and the instant Motion. (*See* Dkts. 54–55, 61.) The Amended Petition seeks an order that would not only require Kohl's to arbitrate Petitioners' claims, but to also "register its [consumer arbitration] agreement with AAA" and pay administrative fees unrelated to Petitioners' claims. (Dkt. 54, at 11, ¶ 1.) Petitioners' Motion similarly asks this Court to compel Kohl's to "submit[] to the administration of AAA, register[] its arbitration clause on the AAA Consumer Clause Registry, and pay[] all requisite fees." (Dkt. 61-1, at 16.) Petitioners' Counsel presumably hope that this relief will facilitate their refiling all 54,495 arbitration demands against Kohl's with the AAA, thereby exacting settlement pressure on Kohl's through the imposition of tens of millions of dollars in AAA fees.

## III. PETITIONERS AGREED TO ARBITRATE AND CAN PROCEED TO ARBITRATION BEFORE NAM UNDER THE 2023 TERMS

Notwithstanding the availability of NAM, and Kohl's lack of any objection to Petitioners proceeding before NAM under the 2023 Terms, Petitioners seek to avoid application of the 2023 Terms. Yet Petitioners have no basis to avoid application of the 2023 Terms. Petitioners' Amended Petition takes the position that they agreed to the Superseded Terms, which each provide that "Kohl's reserves the right to update or modify these Terms of Use at any time, without prior notice." (Dkt. 54, ¶¶ 2–3; Dkts. 55-1, 55-2, at 1.) Petitioners had actual notice of the 2023 Terms on May 22, 2023 (when they filed their arbitration demands in response to that Terms update). As set forth below, Kohl's business records confirm that Petitioners assented to the NAM arbitration agreement in the 2023 Terms and Rewards Agreement.

*First*, Kohl's business records reflect that each Petitioner has maintained a Kohl's Rewards account for a number of years. (Benedum Decl., ¶¶ 8–9.) Petitioners continue to this day to take advantage of Kohl's Rewards program and maintain their enrollment, having made no attempt to

un-enroll from the program to date.  (*Id.*, ¶ 10.)

*Second*, Kohl's business records reflect that several of the Petitioners have continued to interact with Kohl's online and in-store after May 22, 2023.  (*Id.*, ¶ 11.)  Petitioner Bernal, for instance, signed into her Kohl's Rewards account on November 22, 2023.  (*Id.*, ¶ 12.)  Petitioner Juarez signed in to her Kohl's Rewards account on July 27, 2023, and there was an in-store purchase associated with her Kohl's Rewards account on August 10, 2023.  (*Id.*, ¶¶ 13–14.)  An e-commerce order placed on June 5, 2023 was delivered to Petitioner Marquez's home address.  (*Id.*, ¶ 15.)

Petitioners may have taken additional actions demonstrating their assent to the 2023 Terms and Rewards Agreement that could only be revealed through discovery.  Kohl's is without knowledge or information sufficient to determine whether, on or after May 22, 2023, Petitioners have further interacted with Kohl's using other e-mail addresses, or whether they have visited the Kohl's website or mobile application or shopped in-store without providing information to link to their Kohls.com or Rewards Account.  (*Id.*, ¶ 16.)

## **ARGUMENT**

### I.   **PETITIONERS ARE NOT ENTITLED TO RELIEF UNDER THE FAA**

#### A.   <u>Kohl's Agrees To Arbitrate Petitioners' Claims Before NAM; Petitioners Are Therefore Not "Aggrieved" By A "Failure, Refusal, or Neglect" to Arbitrate</u>

Section 4 of the FAA prescribes two conditions for relief: first, the party resisting arbitration must have "fail[ed], neglect[ed], or refus[ed]" to arbitrate; and second, the party seeking to direct arbitration must have been "aggrieved" by that failure, neglect, or refusal.  *See* 9 U.S.C. § 4; *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1366 (11th Cir. 2023) (citing *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011) ("After all, FAA § 4 is only triggered when one party has expressed a 'refusal'[, failure, or neglect] to arbitrate, and the other

14

party has been *thereby* 'aggrieved.'" (emphasis added)). The refusal to arbitrate must be "unequivocal." *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995), *abrogated on other grounds*, *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

Kohl's has not refused to arbitrate Petitioners' putative claims. Kohl's has invited Petitioners to arbitrate their claims before NAM under the 2023 Terms. Petitioners have declined to do so. Kohl's continued willingness to arbitrate means that Kohl's has not unequivocally refused to arbitrate. *See Allen v. Horter Inv. Mgmt., LLC*, No. 1:20-cv-11, 2020 WL 5814498, at *3 (S.D. Ohio Sept. 30, 2020) (defendant's willingness to arbitrate plaintiffs' claims after the AAA declined to administer consumer disputes involving defendant meant that defendant's acts did not "amount to an unequivocal refusal to arbitrate"; denying request to compel arbitration and dismissing action with prejudice); *Broadcort Cap. Corp. v. Dutcher*, 859 F. Supp. 1517, 1520 (S.D.N.Y. 1994) (distinguishing between a disagreement over the forum for the arbitration and a refusal "to arbitrate at all"; denying request to compel arbitration). This case matches up with *Dean Witter Reynolds Inc. v. Prouse*, 831 F. Supp. 328, 332 (S.D.N.Y. 1993), in which a brokerage firm "expressed every willingness" to arbitrate its customers' claims before the forum specified in the current arbitration agreement—rather than the forum specified in a superseded arbitration agreement. In those circumstances, the customers were not a party aggrieved by the refusal to arbitrate. *Id.* (denying request to compel arbitration).

The same is true here. Kohl's is willing to arbitrate Petitioners' claims before NAM. Petitioners therefore cannot obtain relief under Section 4 of the FAA, because there has not been an unequivocal refusal to arbitrate. The Motion should be denied, and the Petition should be dismissed.[11]

---

[11] Petitioners cannot argue that Kohl's willingness to arbitrate before NAM—a nationally recognized arbitration provider—constitutes a constructive refusal to arbitrate. Indeed,

**B. This Court Lacks Authority To Compel Kohl's To Register An Arbitration Agreement With The AAA**

As noted above, this is not a simple Petition and Motion to compel arbitration asking Kohl's to arbitrate four Petitioners' claims and pay incidental *filing fees*. Instead, Petitioners ask this Court for the extraordinary remedy of compelling Kohl's to pay *registration fees* that the AAA has not invoiced Kohl's for—which would effectively force Kohl's to submit to the jurisdiction of the AAA, an entity with which Kohl's has no ongoing relationship—and for the AAA to thereafter open cases it has already closed pursuant to the AAA's own rules.[12]

Petitioners cite *no authority*—neither in their Petition nor their Motion—where a court has done what Petitioners are asking this Court to do. Specifically, they cite no case where a court ordered a company to register its arbitration agreement with a particular arbitral body in a situation where the company had no ongoing relationship with the arbitral body, the arbitral body did not ask the company to register its agreement (by sending an invoice for registration or otherwise) and the company stood ready to conduct arbitrations with a different arbitral body. In short, Petitioners ask for extraordinary relief but offer no justification for it.[13] Petitioners' failure to identify a single

Petitioners' Counsel seeks to proceed before NAM under the 2023 Terms on behalf of other clients. (*See* Mazzuchetti Decl., Ex. B.) They cannot possibly take the position that NAM is an appropriate administrator for some of their clients' arbitrations, but categorically unfit for others.

[12]     As noted above, the reason for Petitioners' unusual request is simple. If granted, it will potentially open the floodgates for Petitioners' Counsel to file arbitrations with the AAA on behalf of the other *thousands* of clients counsel purports to represent, exposing Kohl's to millions of dollars in potential arbitration fees related to those other clients. Petitioner's Counsel will file on behalf of their clients without any regard to whether they have agreed to the 2023 Terms.

[13]     Petitioners, in their argument requesting such relief, cite to five cases. (Mot. at 15–16.) One case is cited only for a general proposition of law: *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018). (*Id.*) The other four cases Petitioners cite merely held that a company's failure to pay fees to the arbitral body elected in its arbitration agreement could be a violation of that agreement: *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003); *Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015); *Wallrich v. Samsung Elecs. Am., Inc.*, No. 22-cv-5506, 2023 WL 5935024 (N.D. Ill. Sept. 12, 2023) appeal docketed, No. 23-2842 (7th Cir. Sept. 25, 2023). (*Id.* at 15.) These cases do not compel a company to pay arbitration fees that it (1) has not been invoiced, and (2) did not elect as the arbitral body in its arbitration clause. These cases are, therefore, inapposite.

on-point case is understandable: federal courts *are not permitted* to grant Petitioners' requested relief. When deciding a motion to compel arbitration, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Under that principle, gateway "procedural" issues are "presumptively *not* for the judge, but for an arbitrator, to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). As a matter of law, questions involving the payment of arbitration-related fees are procedural, and not proper for judicial adjudication. *See, e.g.*, *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) (declining to enter an order compelling company to pay arbitration-related fees and holding that "[t]he payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator"); *see also Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review").

Here, Petitioners ask this Court to compel Kohl's to register its superseded arbitration agreements with the AAA and pay all fees and costs fees related to Petitioners' requested arbitrations. (Dkt. 61-2.) That request improperly asks the Court to address a procedural matter outside the court's authority. For that reason, the Motion cannot be granted as a matter of law and should be denied; the Petition should be dismissed.

### C. Petitioners Improperly Ask This Court To Controvert The Well-Settled Legal Principle That Courts Should Not Override An Arbitral Body's Interpretation Of Its Own Rules

Separately, federal courts have recognized that a court should not disrupt an arbitral body's procedural rules unless a party "can show that these rules are illegal or unconstitutional," *Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 695 F. Supp. 756, 757 (S.D.N.Y. 1988),

as "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp., PLC v. Rep. of Argentina*, 572 U.S. 25, 34–35 (2014*).*  It is therefore well-settled that courts should not replace an arbitral body's interpretation of its own rules with the court's interpretation. *See Vital Pharms. Inc. v. PepsiCo Inc.*, No. CV-22-00591, 2022 WL 2176528, at *3 n.3 (D. Ariz. June 16, 2022) ("The Court has no warrant to disturb the AAA's interpretation of its own rules").

Consistent with those principles, the court in *Steffanie A. v. Gold Club Tampa, Inc.*, No. 19-cv-3097-T-33, 2020 WL 4201948 (M.D. Fla. July 22, 2020), declined to force the AAA to open a case the AAA had closed in accordance with its rules, recognizing the lack of legal authority for any such order:

> Defendants have not pointed this Court to any legal authority supporting the proposition that a district court can force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed.

*Id.* at *4 (vacating order to compel arbitration).  Similarly, in *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519, 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021), the court declined to compel arbitration where the AAA had terminated proceedings, recognizing that a "district court can[not] force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed." *Id.* at *11 (alteration in original) (citation omitted).

Here, just as in *Gold Club* and *Cota*, the AAA has already closed Petitioners' requested arbitrations pursuant to the AAA's implementation of its own procedural rules.  Applying well-settled jurisprudence, this Court cannot as a matter of law force the AAA "to ignore its own rules and re-open a case that it has previously closed." *Id.*  For that reason, too, the Motion should be denied and the Petition should be dismissed.

**D. Petitioners Are Not Entitled To The Equitable Relief They Seek Because They Have Adequate Remedies At Law**

Denial of the Motion and dismissal of the Petition are also warranted pursuant to the general principle that equitable relief cannot be awarded if the parties can be made whole through a legal remedy. *See, e.g.*, *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law").

To be sure, the Motion and Petition request equitable relief: they ask this Court to force Kohl's to register its arbitration agreement with the AAA, and for the AAA to reopen cases it has already administratively closed. Neither of those remedies are specified under the FAA, or any other statute. *See Gold Club*, 2020 WL 4201948, at *4 (noting the absence of "any legal authority supporting the proposition that a district court can force . . . the AAA to ignore its own rules and re-open a case that it has previously closed").

Those equitable remedies are unavailable to Petitioners because, among the other reasons discussed herein, Petitioners have adequate remedies at law, including the option of pursuing their purported claims in Court (if it is true that they would otherwise be subject to arbitration administered by the AAA), or pursuing their claims in arbitrations administered by NAM. "Under well-settled case law and the AAA's own rules, the termination of the arbitration due to Defendant's non-payment of fees means that Plaintiff can pursue his claims in court." *Eliasieh v. Legally Mine, LLC*, No. 18-cv-03622, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020). Though pursuing their purported claims in court would not help Petitioners' Counsel's unspoken goal of leveraging the threat of massive arbitration fees against Kohl's, Petitioners have adequate remedies at law for the claims they seek to advance through the Petition. For example, Petitioners can proceed to arbitrate before NAM under the 2023 Terms. The only "harm" that would result from denying Petitioners' Petition and Motion would be to their Counsel, who would not be able to

impose the same exorbitant fees on Kohl's that they hope to impose by filing with AAA. The existence of those other legal remedies makes Petitioners' requests for equitable relief improper and, again, warrants denial of the Motion and dismissal of the Petition.

## II. PETITIONERS' BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING PRECLUDES ENFORCEMENT OF THE SUPERSEDED TERMS

Even if Petitioners were able to demonstrate that their claims were arbitrable before the AAA under the Superseded Terms (which they cannot), Petitioners' breach of the arbitration agreement in the Superseded Terms and the duty of good faith and fair dealing therein excuses any obligation Kohl's may have had to arbitrate with Petitioners under the Superseded Terms. *See, e.g.*, *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999).

Wisconsin, like other jurisdictions, recognizes an implied duty of good faith and fair dealing in every contract. *Home Valu, Inc. v. Pep Boys—Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 965–66 (7th Cir. 2000). Courts use this duty as a rule of construction to "fill contractual gaps," *Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992), to prevent parties from acting in a manner that "follow[s] the letter but not the spirit of an agreement." *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 27, 348 Wis. 2d 360, 842 N.W.2d 240 (2013); *see also Chayka v. Santini*, 47 Wis. 2d 102, 176 N.W.2d 561 (1970). Further, under Wisconsin law, "[i]t is well established that a material breach [of a contract] by one party may excuse subsequent performance by the other." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). This well-established principle extends to material breaches of the implied duty of good faith and fair dealing. *Donald L. Delebo, D.D.S. v. Cmty. Dental*, 299 Wis. 2d 783, 728 N.W.2d 374 (Ct. App. 2007) (unpublished).

Here Petitioners materially breached the arbitration agreement in the Superseded Terms. *First*, the arbitration agreement in the Superseded Terms provides that "CLAIMS OF MORE

THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER." (*See* Dkts. 55-1, 55-2, at 5.) Petitioners directly breached this provision by coordinating and consolidating their claims with tens of thousands of other alleged Kohl's customers. *Second*, Petitioners did not comply with the pre-arbitration informal dispute resolution requirement under the Superseded Terms. Petitioners' Notices of Dispute—and those of their counsel's tens of thousands of other purported clients—failed to specify "the nature of the claim and the relief being sought." (*See id.*) Petitioners, like every other one of their Counsel's clients, did not provide adequate notice of even a single purchase with which they took issue. (*Id.*) Nor did they provide notice of the law they claimed was violated or the basis for the relief sought. Petitioners' Notices of Dispute merely stated that "Kohl's deceptive pricing scheme violates federal and state laws," including Wisconsin law (without conceding its applicability), and made the conclusory allegation that they were seeking $2,500 without explaining how any of their actual purchases could result in $2,500 in damages. (*Id.*) When Kohl's demanded that Petitioners provide notice of specific transactions that they claimed to be at issue, Petitioners' Counsel refused. (Mazzuchetti Decl., ¶ 13.)

Further, Petitioners independently breached the duty of good faith and fair dealing in the Superseded Terms by failing to follow the spirit of those agreements. The purpose of the arbitration clauses in the Superseded Terms was to resolve bona fide disputes—not to be used as a weapon to extort a multi-million dollar settlement untethered to the merits of any purported claims. But that is what Petitioners and their counsel are doing here. Petitioners' mass arbitration scheme turns the basic principles of bi-lateral arbitration on its head. Rather than fostering a cost-effective, efficient alternative to litigation in court, Petitioners attempt to make arbitration prohibitively costly. Petitioners frustrated any ability to resolve their claims before arbitration by

refusing to identify any specific transactions they claimed to be at issue, and asserted their claims in coordination with tens of thousands of other individuals for the purpose of imposing tens of millions of dollars in arbitration fees to extort Kohl's into settling their claims without regard to their merits. Petitioners' claims are baseless and submitted in bad faith for the purpose of harassment.

Under these circumstances, Kohl's is under no obligation to comply with the arbitration agreement in the Superseded Terms, and Petitioners therefore have no basis to seek relief under Section 4 of the FAA.

## III. PETITIONERS' REQUEST FOR SANCTIONS UNDER CALIFORNIA'S SENATE BILL 707 IS MERITLESS AND SHOULD BE DENIED

In addition to their requests to compel arbitration, Petitioners also ask this Court to sanction Kohl's pursuant to Cal. Civ. Proc. § 1281.97 ("SB 707"). That request should be disregarded for the following, independently sufficient reasons:

*First*, even if SB 707 were not preempted by the FAA, SB 707 would not apply here because the relevant arbitration agreements all state they are governed by federal, not California law. (Dkt. 55-1-2, at 4 ("[T]he Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and federal arbitration law apply to this Arbitration Agreement"); Dkt. 55-2, at 4 (same); Dkt. 55-4, at 5.). California courts have observed that SB 707 may apply only "where an arbitration agreement states that its 'enforcement' will be governed by California law," and the agreements here do not so provide. *Morales v. Midland Credit Mgmt., Inc.*, No. 19-CV-356585, slip op. at 6 (Cal. Super. Ct. Jun. 3, 2022) (SB 707 did not apply to agreement which stated that it was governed by the FAA).

*Second*, SB 707 does not apply because the AAA has not issued an invoice to Kohl's that Kohl's failed to pay, which is a condition precedent to any SB 707 claim. SB 707 states that a drafting party violates the law where it fails to pay "the fees or costs to initiate an arbitration

proceeding . . . within 30 days after *the due date.*"  Cal. Code Civ. Proc. § 1281.97(a)(1) (emphasis

added).  Under the statute, fees are not "due" until the date set forth in an invoice.  *See* Cal. Code

Civ. P. § 1281.97(a)(2); *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 774 (2022) ("[U]nless the

parties expressly agree to the contrary, the drafting party's receipt of the invoice triggers the 30-

day clock [to pay required fees] under [SB 707]").  Here, the AAA has never invoiced Kohl's in

connection with Petitioners' claims, and Petitioners do not and cannot plead otherwise.  SB 707 is

thus inapplicable for this independent reason as well.

 *Third*, even assuming arguendo that SB 707 applied, which it does not, it is preempted by

the FAA and thus cannot be the basis for a sanctions award.  In *Belyea v. GreenSky, Inc.*, 637 F.

Supp. 3d 745 (N.D. Cal. 2022), the court observed that the FAA establishes an "equal-treatment

principle" that requires that arbitration agreements be placed on an equal footing with other types

of contracts:

> "[U]nder the 'equal-treatment' principle, a court may invalidate or refuse to enforce
> an arbitration agreement based on generally applicable contract defenses like fraud
> or unconscionability, but not on legal rules that apply only to arbitration or that
> derive their meaning from the fact that an agreement to arbitrate is at issue."

*Id.* at 756.  Accordingly, the FAA "preempts rules 'too tailor-made to arbitration agreements—

subjecting them, by virtue of their defining trait, to uncommon barriers.'"  *Id.*  Upon finding that

SB 707 "makes arbitration provisions unenforceable on arbitration-specific grounds," the *Belyea*

court concluded that SB 707 violates the equal-treatment principle of the FAA and is thus

preempted. *Id.; accord Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718, 2023 WL

6132959, at *2 (N.D. Cal. Aug. 29, 2023) (noting that the "reasoning of *Belyea* is correct" with

respect to the FAA's preemption of SB 707).

## IV.    THE PETITION AND MOTION SHOULD BE DENIED BECAUSE PETITIONERS CAN ARBITRATE BEFORE NAM AND ARE BOUND BY THE 2023 TERMS

### A.    The 2023 Terms, Not The Superseded Terms, Govern Petitioners' Claims

Petitioners' Motion should be denied, and the Petition should be dismissed for the independent reason that the operative 2023 Terms govern Petitioners' claims and NAM is the proper arbitral provider to administer those claims.  Petitioners had actual knowledge of the 2023 Terms on May 22, 2023, as evidenced by their filing of arbitration demands in response to those updated Terms, and confirmed their agreement to the 2023 Terms.

"Whether a binding arbitration agreement exists is determined under principles of state contract law."  *Tinder v. Pinkerton Sec*., 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). "Under Wisconsin law, a valid contract must be supported by an offer, acceptance, and consideration."  *Malone v. Hoogland Foods, LLC*, No. 19-cv-891, 2020 WL 6158201, at *4 (W.D. Wis. Oct. 21, 2020).  "The existence of an offer and acceptance are mutual expressions of assent," and consideration is established by a 'benefit received' by Petitioners.  *Id.* (citations omitted). Under Wisconsin law, "[a] vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance.  A buyer may accept by performing the acts the vendor proposes to treat as acceptance."  *Delonge v. Time Warner Cable Bus. LLC*, No. 13-CV-0988, 2014 WL 3890766, at *2 (E.D. Wis. Aug. 6, 2014) (quoting *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (interpreting Wisconsin law)).

Courts have repeatedly held that continued use of a defendant's services after notice constitutes acceptance of updated terms.  *Pincaro v. Glassdoor, Inc.*, No. 16-CV-6870, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017), is instructive.  In *Pincaro*, the plaintiffs registered for Glassdoor accounts (Glassdoor is a website that provides employee reviews and ratings of employers along with salary and benefits information).  Glassdoor users who register for an

account are informed that by doing so they are agreeing to hyperlinked terms of use. The operative terms of use for plaintiffs' Glassdoor accounts provided that Glassdoor could revise the terms of use, that Glassdoor would notify users of the change, and that users' continued use of Glassdoor's website after that time would constitute acceptance of the updated terms. Glassdoor subsequently updated its terms of use on several occasions. When it made the then-most recent (and operative) update, Glassdoor posted the revised terms on its website and sent the plaintiffs an email informing them of the change. *Pincaro*, 2017 WL 4046317, at *6.

The *Pincaro* Court found the plaintiffs were on notice of the new terms, and that the plaintiffs assented to the new terms by continuing to access and use Glassdoor.com after the terms went into effect. The Court was clear: that the plaintiffs "assented to these Terms of Use by their continued use of Glassdoor's website, as opposed to requiring some further, affirmative step, [did] not render these updated terms inapplicable." *Id.*[14]

Other courts agree. Where a consumer agrees to terms that expressly state they can be modified upon notice, the consumer becomes bound to the revised terms by continued use of the website or services. *See, e.g.*, *Klein v. Verizon Communications, Inc.*, No. 1:12-cv-00757, 2017 WL 5071306, at *1, 3–5 & n.1 (E.D. Va. Aug. 9, 2017) (arbitration compelled where the user continued to use the service after receiving email notice of an amendment to terms of service); *In*

---

[14]    *See also, e.g.*, *Delonge*, 2014 WL 3890766, at *2 (compelling arbitration after continued use of cable services where notice of updated terms advised that continued use constituted agreement and directed customers to cancel if they did not agree to be bound by updated terms); *see, also, e.g.*, *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 868 (E.D. Wis. 2006) (continued use of credit card after notice of updated terms constituted acceptance of the updated terms); *Crawford v. Talk Am., Inc.*, No. 05-CV-0180, 2005 WL 2465909, at *4 (S.D. Ill. Oct. 6, 2005) (continued use of telephone services after receiving notice of new terms constituted agreement to the updated terms); *Klein v. Verizon Communications, Inc.*, No. 1:12-cv-00757, 2017 WL 5071306, at *1, 3–5 & n.1 (E.D. Va. Aug. 9, 2017) (arbitration compelled where the user continued to use the service after receiving email notification of an amendment to terms of service); Restatement of the Law, Consumer Contracts Section § 3 TD No 2 REV at 4–5 (2022) (affirmative manifestations of assent can include continued use of services).

*re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1165–67 (N.D. Cal. 2016) (upholding enforceability of Facebook's amended user agreement where Facebook notified users of change in terms and users were deemed to have assented to the new terms by their continued use).

Petitioners confirm that they were aware of the 2023 Terms' posting as of May 22, 2023, when their counsel filed arbitrations on their behalf as a reflexive response to that update. (Dkt. 54, ¶ 5, 8; Dkts. 55-9, 55-10, 55-11, 55-12.)[15] And they each received e-mails in June 2023, once again notifying them of 2023 Terms. (Dkts. 56, 57, 58, 59.) Petitioners seek to avoid application of the 2023 Terms by arguing that they did not assent to them because they have not "made any new purchases or otherwise agreed to these new terms." (Dkt. 61-1, at 16.) Yet Kohl's business records reflect that Petitioners *have* agreed to these new terms, through purchases and log-ins to the Kohl's Rewards accounts associated with the e-mail addresses that they provided. (*See supra*, Sec. III.)

Petitioners incorrectly assert that the 2023 Terms could not apply to their claims, which they contend arose and were filed before any agreement to the 2023 Terms. Yet where there is no express limitation to "future disputes," an arbitration agreement may be applied to preexisting claims. *See, e.g.*, *Peng v. Uber Techs.*, *Inc.*, 237 F. Supp. 3d 36, 51 (E.D.N.Y. 2017); *see also Peters v. Amazon Servs., LLC*, 669 F. App'x 487, 488 (9th Cir. 2016). "[T]he relevant question is not when the plaintiff['s] claims arose, but whether they arise under [the] agreements with the defendant." *Peng*, 237 F. Supp. 3d at 51. Here, the 2023 Terms do not contain an express limitation to "future disputes." Thus, the 2023 Terms require any dispute with Kohl's, both past

---

[15] The Supreme Court has explained that in "our system of representative litigation, ... each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, (1879)).

and future, to be resolved by arbitration with NAM. *See e.g.*, *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2017 WL 10111078, at *10–11 (E.D.N.Y. Aug. 18, 2017), *report and recommendation adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017).

Discovery may reveal that Petitioners took further action to manifest their assent to the 2023 Terms. Should the Court conclude that Petitioners' requested relief may be justified, Kohl's respectfully submits that at a minimum, there are triable issues of fact concerning Petitioners' agreement to arbitrate under the updated 2023 Terms and Rewards Agreement and that pursuant to the FAA's mandates, the Court "shall proceed summarily to the trial thereof" before any order compelling arbitration is issued. 9 U.S.C. § 4. The Seventh Circuit has recognized when the existence of an arbitration agreement is referred to trial, the parties are permitted limited discovery on that issue. *Deputy v. Lehman Bros.*, 345 F.3d 494, 511 (7th Cir. 2003) (where issue of existence of arbitration agreement is referred to trial under section 4 of the FAA, parties are permitted limited discovery).

### B. Petitioners' Perfunctory Argument That The 2023 Terms Are Substantively Unconscionable Lacks Merit

Petitioners' conclusory argument that the 2023 Terms are unconscionable (Dkt. 61-1, at 18) is meritless. Unconscionability requires a finding of both procedural and substantive unconscionability. *See Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 29, 290 Wis. 2d 514, 714 N.W.2d 155 (2006); *see also Richmond v. Russ Darrow Chrysler LLC*, No. 18-CV-128, 2018 WL 3978124, at *2–3 (E.D. Wis. Aug. 20, 2018). Petitioners' argument fails immediately because they make no attempt to argue that the 2023 Terms are substantively unconscionable as applied to *their claims*.

Petitioners generally argue that the 2023 Terms are substantively unconscionable because they "burden individuals seeking to vindicate their rights through the pre-dispute negotiation process requiring physical mail and signatures, the demand filing process requiring physical mail and signatures, the opt-out process requiring physical mail and signatures, and the multiple rounds of bellwether arbitrations that delay claims indefinitely." (Dkt. 61-1, at 18.) It is unclear who these "individuals" who are supposedly burdened by the 2023 Terms are, because Petitioners do not contend that physical mail and signatures presents an unconscionable burden on their ability to comply with the 2023 Terms. In fact, Petitioners' Counsel confirm that Petitioners already sent their Notices of Dispute to Kohl's by physical mail. (Dkt. 55, ¶ 7.)

Nor do Petitioners explain how "multiple rounds of bellwether arbitrations" would "delay claims indefinitely"—Petitioners appear to be first in line among their Counsel's nearly 55,000 clients. Petitioners' Counsel contend they will expend at least $75,000 in lodestar fees bringing each of the Petitioners' individual claims to a final decision. (Dkt. 32-3, ¶ 12.) Neither Petitioners' Counsel nor the AAA could possibly arbitrate or administer tens of thousands of arbitrations on these claims—which Petitioners' Counsel concedes are complicated and fact-driven—all at once. Petitioners' Counsel have submitted sworn testimony that Petitioners' claims are "complex" and that "litigating or arbitrating false discount claims require[s] substantial attorney time." (Dkt. 32-3, ¶¶ 7, 12.) Petitioners' Counsel cannot credibly argue that they are capable of litigating tens of thousands of such claims simultaneously. Indeed, by Petitioners' Counsel's own estimation, arbitrating all of their purported clients' claims would result in *billions of dollars in lodestar fees* ($75,000 X 54,495). Even at $1,000 per hour, this would require more than 4 million hours. To accomplish the level of effort that Petitioners' Counsel averred is required, it would take a team of 200 lawyers working full time more than 10 years to complete the 54,495 arbitrations.

Still further, Petitioners' Counsel—on behalf of other purported "clients"—has sought to enforce the 2023 Terms.  (Mazzuchetti Decl., Ex. B.)  As the Central District of California informed Petitioners and their Counsel already, "[t]he parties agreement cannot be enforceable in one respect but unconscionable in another.  Petitioners simply cannot have it both ways."  (Dkt. 52, at 6.)

In short, Petitioners make no argument that application of the 2023 Terms to their claims would present any circumstance justifying a finding of substantive unconscionability.  Petitioners' failure to demonstrate why the 2023 Terms are substantively unconscionable is fatal to their argument.  *See Garcia v. Citibank, N.A.*, No. 18-cv-9413, 2019 WL 2902499, at *3 (C.D. Cal. Feb. 13, 2019).  The 2023 Terms provide for arbitration before NAM, a nationally-recognized neutral arbitration provider, under reasonable terms.  Mere conjecture that the NAM may be a more favorable venue to Kohl's than AAA is insufficient, where Petitioners fail to identify "any particular difference in arbitration rules that significantly affect [their] rights."  *Id.*  In truth, the only difference for Petitioners is that they and their Counsel will not be able to utilize the AAA's fee structure to extort a settlement from Kohl's.  Petitioners have no right to engage in such bad faith tactics, and the Court should not condone them.

## CONCLUSION

For the foregoing reasons, the Petitioners' Motion to Compel Arbitration should be denied, and the Petition should be dismissed.  If the Petition is not dismissed, the Court should order threshold discovery regarding which arbitration agreement applies to Petitioners.

Dated: January 22, 2024
       Parsippany, New Jersey

      By: */s/ Lauri A. Mazzuchetti*

| | |
|---|---|
| Lauri A. Mazzuchetti | Matthew M. Wuest |
| KELLEY DRYE & WARREN LLP | Emma J. Jewell |
| One Jefferson Road | GODFREY & KAHN, S.C. |
| 2nd Floor | 833 East Michigan Street |
| Parsippany, NJ 07054 | Suite 1800 |
| Telephone: (973) 503-5900 | Milwaukee, WI 53202 |
| Facsimile: (973) 503-5950 | Telephone: (414) 287-9244 |
| lmazzuchetti@kelleydrye.com | Facsimile: (414) 273-9620 |
| | mwuest@gklaw.com |
| James B. Saylor | |
| KELLEY DRYE & WARREN LLP | Michael W. McTigue Jr. |
| 3 World Trade Center | Meredith C. Slawe |
| 175 Greenwich Street | SKADDEN, ARPS, SLATE, MEAGHER & |
| New York, NY 10007 | FLOM LLP |
| Telephone: (212) 808-7800 | One Manhattan West |
| jsaylor@kelleydrye.com | New York, New York 10001 |
| | Telephone: (212) 735-3000 |
| *Attorneys for Defendants* | Facsimile: (212) 735-2000 |
| *Kohl's Corporation and Kohl's, Inc.* | michael.mctigue@skadden.com |
| | meredith.slawe@skadden.com |