# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

ANA BERNAL, AMIEE MARQUEZ,
PATRICIA JUAREZ, and CLARA ROA,

    Petitioners,

v.

KOHL'S CORPORATION,
and KOHL'S, INC.,

    Respondents.

Case No. 2:23-cv-01542-LA

# PETITIONERS' REPLY IN FURTHER SUPPORT OF
# THEIR MOTION TO COMPEL ARBITRATION

## I. INTRODUCTION

Kohl's[1] has illegally offered false discounts to hundreds of thousands of customers for years in violation of California law. Each violation imposed minor harm individually—a few dollars on some purchases—but in the aggregate the amount is substantial. Normally, such claims would be litigated efficiently in a class action. In 2016, Kohl's paid $6.15 million to settle a class action involving California consumers who, like Petitioners here, purchased products from Kohl's at false discounts. *See* Am. Class Action Settlement Agreement, *Russell v. Kohl's Dep't Stores, Inc.*, No. 15-cv-01143 (C.D. Cal. Apr. 20, 2016), ECF No. 73-1. More than 350,000 consumers submitted claims to participate in that settlement. Castillejos Decl. at ¶¶ 13–14, *Russell*, No. 15-cv-01143, ECF No. 86-4. But after that class settlement, Kohl's required customers to agree to individual arbitration with the AAA. Perhaps it hoped future victims would not bother to sue individually, which explains its alarm at facing "54,495 . . . substantively identical arbitration demands" that trigger "millions of dollars in arbitration fees." Dkt. 70 ("Opp.") at 1. But its dashed hope that customers would never sue cannot shift the blame. Kohl's alone is responsible for violating the law at a broad scale and then requiring individual arbitrations of those violations.

After learning that some consumers were undeterred by the hurdle of a class-action waiver, Kohl's decided the hurdles should be higher. It posted a new arbitration agreement on its website and later emailed it to all consumers—including those it *knew* were bringing claims. The new arbitration agreement is designed to raise the costs of pursuing low-dollar-value claims. For example, before conducting any discovery, each claimant *and* her attorney must "personally sign" a statement identifying *every* "transaction" at issue and perform "a detailed calculation of any damages." *See* 2023 Terms at 4. After that, each claimant must "personally participate in an individualized telephone settlement conference." *Id.* Those steps are only the first gauntlet of many, as the Motion explained. *See* Mot. at 7–8. Kohl's strategy is to burden the *claimant*, not attorneys. Attorney fees are recoverable; fees for a claimant's time are not.

---

[1] Capitalized terms were previously defined in Petitioners' Motion. *See* Dkt. 61-1 ("Mot.").

When one turns from its table-pounding facts section, the legal arguments Kohl's offers are feeble jabs. Its first argument is, amazingly, that this Court *cannot* enforce the AAA Arbitration Agreement *even after concluding it applies*. That set of facially absurd arguments defies decades of precedent holding that courts must enforce arbitration agreements. Kohl's next argues that the Federal Arbitration Act displaces California's S.B. 707, but the two laws are fully compatible. Last, and least, Kohl's ignores applicable Wisconsin case law to argue that its change to its terms binds Petitioners, even though they never affirmatively consented to the 2023 Terms.

Despite the rhetoric about thousands of claims, the Court need only resolve the question of whether the four Petitioners here are entitled to arbitrate before AAA. They clearly are. Kohl's does not dispute that each Petitioner entered into the AAA Arbitration Agreement with Kohl's. Each Petitioner dutifully followed the dispute-resolution process prescribed in it, and as the first step, served a Notice of Dispute in December 2022. *See* Petitioners' Notices of Dispute. Then, for six months, Petitioners tried to resolve their claims informally through "good faith negotiation" as required by the AAA Arbitration Agreement, including by participating in a mediation session before a former federal judge in April 2023. *See* 2020 Terms at 4; 2022 Terms at 4; *see generally* Mot. at 4–7. During those six months, Kohl's performed under the AAA Arbitration Agreement, too. But then in May 2023, Kohl's abruptly posted the 2023 Terms on its website to try to force each Petitioner to start all over again under a new arbitration agreement. *See id.*

Instead of accepting that new agreement, Petitioners continued to perform under the AAA Arbitration Agreement by filing arbitration demands with the AAA. And when they did so, the AAA found that Kohl's breached AAA's rules by refusing to pay to register the AAA Arbitration Agreement. Given Kohl's breach of its rules, AAA refused to administer the arbitrations and closed them. But AAA was clear that it *would* administer Petitioners' arbitrations if a court ordered the parties to arbitrate with AAA. *See* June 7, 2023 AAA Letter. This Petition ensued.

The Court should take up that invitation. The Federal Arbitration Act and precedent interpreting it clearly require Kohl's to honor its agreements with Petitioners, including the necessary act of paying arbitration filing fees and registering its agreement with AAA. Petitioners

2

never agreed to arbitrate any other way. Because Kohl's failed to pay required fees, the Court should also issue sanctions against Kohl's.

## II. ARGUMENT

Petitioners' argument is simple: the AAA Arbitration Agreement governs these claims. Because the AAA Arbitration Agreement controls, this Court can compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. And because Kohl's stymied arbitration after requiring it, sanctions are mandatory.

### A. The AAA Arbitration Agreement Controls.

Begin with common ground. Kohl's does not dispute that each Petitioner agreed to the AAA Arbitration Agreement by making online purchases subject to it.

Kohl's instead argues that the 2023 Terms have "superseded" that Agreement because some Petitioners have recently interacted with Kohl's. Opp. at 13–14. But Kohl's allegations do not show that the 2023 Terms apply, and the Wisconsin Court of Appeals recently explained why. *See Pruett v. WESTconsin Credit Union*, 998 N.W.2d 529 (Wis. Ct. App. 2023).

*First*, the 2023 Terms are not a valid unilateral modification. In *Pruett*, WESTconsin Credit Union's original membership agreement stated that it "may change the terms of this Agreement." *Id.* at 533. WESTconsin then mailed a revised membership agreement providing for arbitration "EVEN IF THE CLAIM ARISES OUT OF . . . CONDUCT THAT OCCURRED PRIOR" and stating that members consent to the modified agreement by "FAILING TO OPT-OUT" AND "CONTINUING YOUR MEMBERSHIP." *Id.* at 533–34. On those facts, the *Pruett* court reasoned that WESTconsin's ability to modify the contract was not dispositive. Contracts would be "illusory" if one party could make *any* modification—rather, all changes are constrained by "good faith" and must be "the type of change contemplated by the parties." *Id.* at 545. The court held that it was *not* "good faith" to "add a new term to the original Agreement seeking to retroactively deprive another party of a legal right." *Id.*

The same reasoning applies here. Kohl's had some leeway to change its terms, but could not, consistent with its duty of good faith, revolutionize the arbitration protocol *retroactively* with

3

respect to known, accrued claims. That makes the 2023 Terms unenforceable as a unilateral modification. Kohl's argues that the 2023 Terms are retroactive because there is no "express limitation to 'future disputes,'" Opp. at 26, but the same was true in *Pruett*. The problem is not applying arbitration agreements to past conduct *per se*. The problem is doing so with *knowledge* of the claims, and a design to disadvantage "another party." *Pruett*, 998 N.W.2d at 545. Any other rule would allow companies to "protect [themselves] retroactively from alleged wrongdoing," *id.* at 546, by "amend[ing] the contract in anticipation of a specific claim, altering the arbitration process to the [plaintiff's] detriment and making it more likely the [defendant] would prevail," *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1433 (2012).[2]

*Second*, Petitioners never accepted the 2023 Terms. Again, *Pruett* resolves the question. Acceptance of a modification must be "unequivocal"—it cannot rest on conduct that is "ambiguous" and "consistent either with the continued existence of the original contract, or with a modification." *Pruett*, 998 N.W.2d at 546 (quoting *Nelsen v. Farmers Mut. Auto. Ins. Co.*, 90 N.W.2d 123, 134 (Wis. 1958)). There, "Pruett did not attempt to opt out of the Arbitration Clause, and he continued to use his WCU account after receiving Notice." *Id.* at 547. Nevertheless, WESTconsin could "not demonstrate Pruett's consent to arbitrate by his failure to opt out and by continuing to use his account." *Id.* at 549. Continuing to use his account was ambiguous, since it is consistent with the continued existence of the original contract. The failure to opt-out was also ambiguous because "Pruett may have thought it futile to opt out or that the opt-out provision did not apply to him," since the wording allowed him to opt-out "within 60 days of account opening," and he was a longstanding member. *Id.* at 547–48.

Here, Petitioners unequivocally *rejected* the 2023 Terms by promptly filing their arbitration demands with the AAA. And Petitioners' alleged post-filing interactions with Kohl's were ambiguous at most. Kohl's alleges that Petitioners Bernal and Juarez signed in to their Kohl's

---

[2] *See also Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013) (good faith requirement "prevents [a party] from modifying an arbitration agreement once a claim has accrued or become known to it").

4

Rewards accounts, *see* Opp. at 14, but fails to state what specific conduct constituted assent to the 2023 Terms. Kohl's does not say, for example, that the sign-in process involved assent through clickwrap. The fact of sign-in alone is woefully insufficient for unequivocal acceptance. Pruett not only remained a member of the WESTconsin Credit Union and accessed his WESTconsin account, but he also continued to enter into transactions using it—and even that was insufficient under Wisconsin law. Kohl's next alleges that someone made an "in-store purchase associated with [Petitioner Juarez's] Kohl's Rewards account," Opp. at 14, but fails to explain how it links in-store purchases to a Rewards account. Even if Petitioner Juarez made that purchase (rather than someone else using her phone number at checkout), in-store purchases do not require agreement to the 2023 Terms. As for the e-commerce order made on June 5 that was delivered to Petitioner Marquez's home, *id.*, Kohl's does not say that she ordered it,[3] and this purchase was undisputedly *before* receiving notice of the 2023 Terms, which occurred on June 16. *See* Dkt. 57, ¶ 5.[4]

Finally, Kohl's says nothing about Petitioner Roa. Her and other Petitioners' failure to opt-out of the 2023 Terms does not establish unequivocal acceptance of it. Like Mr. Pruett, Petitioners thought opting out would be "futile," *Pruett*, 998 N.W.2d at 547, since the time to opt-out was "within 60 days of the first time you agreed to terms with Kohl's that included an arbitration agreement," 2023 Terms at 6, which had passed long before the 2023 Terms existed.

Kohl's entirely ignores *Pruett* (though it was cited in the Motion), which is on-point and applies Wisconsin law, and instead relies on other cases that assess different factual scenarios under different laws. For example, *Pincaro v. Glassdoor, Inc.*, No. 16-cv-6870, 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017), applied non-Wisconsin law, and held that the updated agreement applied to claims that arose *after* the agreement was updated when users continued to use

---

[3] Kohl's employs careful phrasing: "an e-commerce order . . . was shipped to [Marquez's] home address." Dkt. 72 at 3. Presumably this is because the order was *not* placed through Petitioner Marquez's account—but perhaps was placed by a roommate, a family member, or a gift-giver.

[4] Kohl's argues that *counsel* had notice, Opp. at 26 n.15, but accepting Kohl's Rewards contract modifications is outside the scope of representation. Even if counsel's knowledge could be imputed to Petitioners, surely counsel's clear actions *rejecting* the 2023 Terms would also be imputed. And each Petitioner clearly rejected the 2023 Terms by filing with the AAA.

5

Glassdoor to post reviews and read others' reviews, *see id.* at *3 (claim arising out of emails giving notice of the updated agreement).[5] Here, no Petitioner continued to use Kohl's to make online purchases—and even if such allegations were made, under *Pruett*, such continued use of Kohl's is consistent with the continued existence of the original contract, and is therefore insufficient to establish unambiguous assent.

Kohl's has now missed its chance to demonstrate that any Petitioner unequivocally accepted the 2023 Terms—and has also missed its chance to demonstrate the need for any discovery into the issue. Each Petitioner unambiguously rejected the 2023 Terms by filing her claims with the AAA weeks before any of her alleged interactions with Kohl's. Kohl's did not submit any evidence of any Petitioner's clickwrap agreement to the 2023 Terms, and under *Pruett*, none of the alleged post-filing interactions with Kohl's is unambiguous assent to retroactive application of the modified terms.

*Last*, even if Petitioners agreed to the 2023 Terms, their one-sided provisions render them unconscionable, and so unenforceable. Kohl's principal response is that even if the 2023 Terms are unconscionable for most consumers, the terms are not "unconscionable as applied to *their claims*." *See* Opp. at 27. For example, the physical mail and signature requirements cannot be unconscionable because Petitioners "already sent their Notices of Dispute to Kohl's by physical mail." *Id.* at 28. The delay-prone bellwether arbitration process cannot be unconscionable because "Petitioners appear to be first in line." *Id.* Put differently, Kohl's argues that "issues facing individuals not before this Court cannot serve as the basis for an unconscionability challenge." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022). "On this point, [Kohl's] is wrong. In assessing unconscionability, the Court must examine the validity of a

---

[5] Other cases are similarly distinguishable. *See Klein v. Verizon Commc'ns, Inc.*, No. 12-cv-00757, 2017 WL 5071306, at *4 (E.D. Va. Aug. 9, 2017) (applying Virginia law to a situation where the plaintiff went beyond accessing a previously created account to continuing to pay for and to use Verizon's internet services); *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1165–67 (N.D. Cal. 2016) (applying non-Wisconsin law to a situation where the plaintiff went beyond logging into a previously created Facebook account to continuing to make use of the social-networking features of that account).

contractual provision *as of the time of the contract is made*—it is a *prospective* analysis which does not require proof that a particular plaintiff has already been adversely affected." *Id.* (emphases added); *see also Wis. Auto Title Loans, Inc. v. Jones*, 2005 WI App 86, ¶ 13, 280 Wis. 2d 823, 833, 696 N.W.2d 214, 219 ("Unconscionability of a contract is determined as of the time the parties entered the agreement."). Kohl's cites no authority for its as-applied, *ex post* unconscionability argument, and there is none.[6]

> B. **Petitioners Are Entitled to Enforce the AAA Arbitration Agreement.**

Because the AAA Arbitration Agreement controls, the Court can, and should, enforce it.

> 1. **AAA's registration and review fees are part of the agreement.**

The FAA empowers courts to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Here, the "terms of the agreement" require that "all [d]isputes" be resolved through arbitration "conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Consumer Arbitration Rules," and, in particular, "Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules." *See* 2020 Terms at 3–4; 2022 Terms at 3–5. Thus, the "terms of the agreement" include the AAA's rules. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (AAA's rules were part of the agreement where arbitrations were to "be conducted in accordance with the then-current rules of [AAA]").

What are the "AAA rules" on the "payment of all filing, administration and arbitrator fees"? Rule 12 of AAA's Consumer Rules requires Kohl's to pay fees to *register* the agreement on AAA's Consumer Clause Registry.[7] *See* AAA's Consumer Arbitration Rules at 16–17 (Rule 12). The rule also requires businesses to notify AAA about any consumer contract that

---

[6] Kohl's also argues that since other plaintiffs in other cases are enforcing the 2023 Terms, Petitioners must do so, too. Opp. at 29. But no one doubts that *claimants* may enforce a contract that is unconscionably harsh toward them if they wish. The problem is a *defendant* enforcing it.

[7] AAA's Consumer Clause Registry is a public database of "businesses that have submitted their consumer arbitration clauses with the AAA and where upon review the AAA has determined that the clause substantially and materially complies with the due process standards of the *Consumer Due Process Protocol*." *Consumer Clause Registry*, AAA, https://apps.adr.org/ClauseRegistry.

incorporates AAA's rules. *Id.* That way, AAA can review the agreement for "material compliance with the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*." *Id.* An initial review costs $500 in administration fees, expedited review adds $250, and an annual administration fee of $500 is required to stay on the registry. *Id.* at 36.

Where, as here, a business has failed to register its arbitration agreement by the time a consumer arbitration demand is filed, Rule 12 requires the business to pay for an expedited review:

> Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review . . . .

*Id.* at 16 (Rule 12). AAA required precisely these fees when Petitioners filed their arbitration demands against Kohl's. *See* Petitioners' Demands for Arbitration. Kohl's refused. *See* June 7, 2023 AAA Letter; June 20, 2023 AAA Letter. And so the AAA closed the arbitrations pending a court order compelling compliance.

On those facts, the law is straightforward. Section 4 of the FAA authorizes the Court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The terms of this agreement incorporate the AAA rules, which require Kohl's to pay for expedited review of its agreement, registration of the agreement, and case-initiation fees. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Kohl's seeks to evade this logic with various arguments, but none succeed.

### 2. Petitioners are "aggrieved," and Kohl's has refused to arbitrate.

Incredibly, Kohl's argues that Petitioners cannot invoke the FAA because it has not actually refused to arbitrate—it would be happy to do so, "under the 2023 Terms." Opp. at 15. The FAA is not toothless as long as a party agrees to arbitrate *somewhere* under *some* terms. Rather, an "aggrieved" person can sue for "the alleged failure, neglect, or refusal of another to

8

arbitrate *under a written agreement for arbitration*." 9 U.S.C. § 4 (emphasis added). Here, Petitioners seek arbitration under the AAA Arbitration Agreement, and are aggrieved because Kohl's refuses to arbitrate under *that* "written agreement for arbitration."

No case holds otherwise. In *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1366 (11th Cir. 2023), the *claimants* had sought arbitration with AAA but were rebuffed, filed in court, and then the *defendants* moved to compel arbitration with AAA. There was plainly no "refusal" by the claimants to arbitrate with the AAA in that circumstance. The other out-of-circuit district court cases are similarly off-point. For example, in *Dean Witter Reynolds Inc. v. Prouse*, 831 F. Supp. 328 (S.D.N.Y. 1993), the court determined that the "AAA is not among the arbitral fora listed in the applicable customer agreement," and then declined to compel arbitration at the other forum because "Dean Witter has expressed a willingness to proceed before that forum." *Id.* at 330. Here, the AAA *is* the forum listed in the "applicable customer agreement," and Kohl's has *not* "expressed a willingness to proceed before that forum."

### 3. The Court can require Kohl's to follow AAA's rules, including its rules on fees.

Next, Kohl's argues that the Court cannot "force Kohl's to submit to the jurisdiction of the AAA," comply with its registration requirement, or pay fees, Opp. at 16, but provides no reason why the power is outside section 4. AAA's "jurisdiction" is simply another way of saying its *rules*, since the AAA rules themselves—not any inherent authority—supply all its power to administer arbitrations. Kohl's agreed to those rules by incorporating them into the AAA Arbitration Agreement. And so, compelling "arbitration in accordance with the terms of the agreement," necessarily requires forcing Kohl's to submit to the jurisdiction of the AAA and pay its fees. 9 U.S.C. § 4. *See Edmondson v. Lilliston Ford Inc*, 722 F. App'x 251, 254–55 (3d Cir. 2018) (compelling arbitration where a business "had 'severed its ties' with the AAA"). The FAA would be a dead letter if courts could compel arbitration but not the payment of the requisite fees. *See Freeman v. Gonzales*, 444 F.3d 1031, 1036 (9th Cir. 2006) ("[A] statutory grant of power carries

9

with it, by implication, everything necessary to carry out the power and make it effectual and complete." (quoting *United States v. Jones*, 204 F.2d 745, 754 (7th Cir. 1953))).

Where an arbitrator has been, or can be, appointed, courts have held that the arbitrator should decide fee issues. In *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009), a party ran out of money before a final hearing and stopped paying fees. *Id.* at 886. In that situation, the "arbitrators are within their discretion to ask one or the other party to pay the entire fee, and tax the fee as part of the award, or, alternatively, suspend the arbitration." *Id.* at 887. Courts will not review that determination by the arbitrator. But where the party *can* afford the fees, and they are required before arbitration can commence, courts will require payment. *E.g.*, *Wallrich v. Samsung Elecs. Am., Inc.*, No. 22-cv-5506, 2023 WL 5935024, at *13 (N.D. Ill. Sept. 12, 2023) ("The Court grants Petitioner's Motion to Compel Arbitration . . . by ordering the parties to arbitrate, **specifically ordering Samsung to pay its fee** so they can." (emphasis added)), *appeal docketed*, No. 22-cv-05506 (7th Cir. Sept. 25, 2023); *Croasmun v. Adtalem Glob. Educ., Inc.*, No. 20-cv-1411, 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020) ("If, however, JAMS declines to take jurisdiction without payment of its fees, petitioners . . . may return to this court for resolution."). Even a case Kohl's relies on understands why this must be true: "it would defy logic to require that an arbitrator must presumptively resolve issues of waiver and breach under § 1281.97 [S.B. 707] where the dispute's substance is the failure to pay the arbitrator to decide the case. If a party continued to withhold payment, the arbitrator would never resolve the dispute." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 753 (N.D. Cal. 2022); *see also* Opp. at 23 (citing and quoting *GreenSky*).

### 4. Requiring Kohl's to arbitrate would not override the AAA.

The AAA closed Petitioners' arbitrations because "Kohl's failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration." June 7, 2023 AAA Letter at 2. Before AAA will administer the cases, Kohl's "must advise the AAA of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable,

10

resolve[] any outstanding payment obligations. Kohl's, at a minimum, must register its arbitration clause." *Id.* And "to register its consumer arbitration clause . . . , Kohl's would need to pay the fee to register their clause." June 20, 2023 AAA Letter at 2. The issue, in other words, is Kohl's obstruction and refusal to register its agreement and pay fees.

Ignoring these facts, Kohl's argues that to "force the AAA to open a case" would "replace an arbitral body's interpretation of its own rules with the court's interpretation." Opp. at 18. To be crystal clear: the Court need not contradict AAA's interpretation of its rules to grant the Motion. Rather, it need *only* tell Kohl's to comply with the AAA's interpretation of its rules.[8]

### 5. Kohl's equitable arguments fail.

Kohl's lastly argues that Petitioners' motion fails because there are adequate remedies at law (of pursuing court actions or agreeing to a different arbitration agreement), Opp. at 19–20, and because Petitioners have acted inequitably themselves, *id.* at 20–22. Neither is true.

Kohl's cites no precedent for its novel, victim-blaming argument that Petitioners cannot compel Kohl's compliance with the arbitration agreement it breached because Petitioners should be happy to sue in court or to submit to a different, unconscionable arbitration agreement. Some cases say claimants *may* go to court if the other party refuses to arbitrate, but that is quite different. As Kohl's acknowledges, Petitioners are entitled to an order compelling arbitration as long as "(1) . . . a valid agreement to arbitrate exists," and "(2) . . . the agreement encompasses the dispute at issue." Opp. at 17 (quoting *Chiron Corp.*, 207 F.3d at 1130). There is no third requirement that a court action be unavailable to Petitioners. *See Wallrich*, 2023 WL 5935024, at *7 (rejecting the

---

[8] That easily distinguishes the cases that Kohl's cites—cases where AAA closed the arbitration because a company breached the arbitration agreement, the individual filed in court, the company moved to compel arbitration *pursuant to the agreement it had breached*, and the court refused to compel arbitration because the company was "in default" of the arbitration proceeding. 9 U.S.C. § 3; *see, e.g.*, *Steffanie A. v. Gold Club Tampa, Inc.*, No. 19-cv-3097, 2020 WL 4201948, at *5 (M.D. Fla. July 22, 2020) (vacating order compelling an individual to arbitration because company's intervening "failure to pay the AAA initial filing fee . . . was a 'default'" under 9 U.S.C. § 3); *Cota v. Art Brand Studios, LLC*, No. 21-cv-1519, 2021 WL 4864588, at *9–12 (S.D.N.Y. Oct. 15, 2021) (denying business's motion to compel arbitration because business "chose[] not to pay the arbitral fees and . . . acted inconsistently with its arbitration right"). Here, Kohl's—not Petitioners—breached the agreement.

11

argument that "the Court may not compel arbitration (including its fees) because [consumers] are now entitled to proceed in Court from where [consumers] might attain an adequate remedy at law" because "the FAA empowers this Court to compel arbitration" and such "arguments against specific performance remain inconsistent with the statute.").

Kohl's accusations of inequitable conduct, *see* Opp. at 20–22, are false and misdirected. After eliminating consumers' class-action rights to escape liability for these claims, Kohl's now criticizes Petitioners, saying that Petitioners' "claims are baseless and submitted in bad faith," that Petitioners did not "follow the spirit of" the agreement, that Petitioners are litigating "jointly" or in a "consolidated" way in violation of the agreement, and that they "did not comply with the pre-arbitration informal dispute resolution requirement." *Id.* at 21–22. Not so. Petitioners filed individual arbitration demands and seek individual, bilateral arbitration. *See* Petitioners' Demands for Arbitration (all demanding individual arbitrations); June 7, 2023 AAA Letter (acknowledging AAA's receipt of "individual consumer demands for arbitration"). They have never "arbitrated or litigated jointly or consolidated with . . . other consumer[s]." Opp. at 21. Petitioners complied with the pre-arbitration informal dispute resolution requirement, too, sending Kohl's an adequate notice of dispute more than 30 days before filing a demand. *See* Petitioners' Notices of Dispute (all describing nature of claim and relief sought).

In all events, Kohl's victim-blaming arguments are improperly directed to the Court because any questions concerning "applicability, enforceability or formation of [the AAA Arbitration Agreement]," are delegated to the arbitrator. 2020 Terms at 4; 2022 Terms at 4; *see also* AAA's Consumer Arbitration Rules at 17 (Rule 14(a)) (vesting "[t]he arbitrator" with the authority to resolve "any objections . . . to the arbitrability of any claim"). Kohl's meritless arguments about the arbitrability of Petitioners' claims, as well as the enforcement of any provision of the AAA Arbitration Agreement, are for the arbitrator to reject—the Court "need not consider [them] because none of [Kohl's] challenges was specific to the delegation provision." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 73 (2010); *see also Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254 (N.D. Cal. 2019) ("[T]he argument made by [respondent]—*i.e.*, that [p]etitioners'

12

arbitration claims . . . improperly constitute an attempt to arbitrate on a classwide basis—is not within the purview of this Court and must instead be decided by the arbitrator."); *McClenon v. Postmates, Inc.*, 473 F. Supp. 3d 803, 811–12 (N.D. Ill. 2020) ("[T]he [agreement] delegates to the arbitrator the exclusive authority to resolve [respondent's] claims that [p]etitioners' arbitration demands violate the Class Action and Representative Action Waivers by seeking *de facto* class arbitration. As such, the Court . . . leaves them for an arbitrator to resolve."); *Wallrich*, 2023 WL 5935024, at *9 (same).

### C. The Court Should Grant Sanctions Against Kohl's Under California's Senate Bill 707.

Under California law, Petitioners are entitled to sanctions if "fees or costs to initiate an arbitration proceeding are not paid [by Kohl's] within 30 days after the due date." Cal. Civ. Proc. Code § 1281.97; *see also* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019) (codified at various sections of Cal. Civ. Proc. Code, pt. 3, tit. 9, including Cal. Civ. Proc. Code § 1281.97). That law applies here, and its standard is met.

*First*, S.B. 707 applies here. S.B. 707 is not an opt-in law that a drafting party can select or not. Though "parties to an arbitration agreement are at liberty to select the procedural provisions governing arbitration proceedings" in most respects, "parties in California may not waive a right conferred by a statute 'where the public benefit of the statute is one of its primary purposes.'" *Heckman v. Live Nation Ent., Inc.*, No. CV 22-0047, 2023 WL 5505999, at *15 (C.D. Cal. Aug. 10, 2023) (quoting *Azteca Constr., Inc. v. ADR Consulting, Inc.*, 121 Cal. App. 4th 1156, 1167 (2004) and citing Cal. Civil Code § 3513)). Petitioners are all consumers who reside in California, and they are entitled to arbitrations in their home counties under the AAA Arbitration Agreement. *See* 2020 Terms at 4; 2022 Terms at 4. The seat of Petitioners' arbitrations will be in California, and California procedural law (including California arbitration law) will govern these California arbitrations. *See* Petitioners' Demands for Arbitration (demanding arbitrations in Petitioners' home counties in California); Pak Decl. ¶ 8 (noting that Petitioners designated California as the locale state for their arbitrations).

13

Federal courts routinely apply S.B. 707 when the FAA controls, and it appears none has ever held that S.B. 707 does not apply merely because the contract is governed by the FAA.[9]

*Second*, the FAA does not preempt S.B. 707. The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "equal treatment" principle Kohl's invokes is an interpretation of the saving clause—"such grounds as exist . . . for the revocation of any contract"—but its argument fails before that step because S.B. 707 *does not invalidate arbitration clauses*. "[R]ather than render arbitration agreements invalid or unenforceable, S.B. 707 *encourages* arbitration by changing the remedies available to non-drafting parties when drafting parties delay the process and refuse to pay required fees." *Postmates Inc. v. 10,356 Individuals*, No. 20-cv-2783, 2021 WL 540155, at *7 (C.D. Cal. Jan. 19, 2021). This case is a prime example. Petitioners seek to enforce Kohl's arbitration clause, not invalidate it, and they seek remedies to assist them in enforcing it. *See Agerkop v. Sisyphian LLC*, No. 19-cv-10414, 2021 WL 1940456, at *4 (C.D. Cal. Apr. 13, 2021) (rejecting a preemption argument against S.B. 707); *cf. GreenSky, Inc.*, 637 F. Supp. 3d at 756 ("*every court* considering the issue to date has found that the FAA does *not* preempt § 1281.97" (emphasis added)).

*Third*, S.B. 707's standard is met. Kohl's largely ignores the arguments in the Motion. It argues, essentially, that unless AAA sent an invoice, S.B. 707 does not apply. But the law never says that. AAA's rules provide that when a business's arbitration clause is not registered on AAA's Consumer Clause Registry and "a consumer arbitration then is filed . . . , AAA will conduct an expedited review [of the clause]" and the business must pay "the nonrefundable review and Registry fee (including any fee for expedited review *at the time of filing*) for this initial review."

---

[9] *E.g.*, *Rahaman v. Citibank, N.A.*, No. 22-cv-08121, 2023 WL 6851739, at *3 (C.D. Cal. Aug. 22, 2023); *Waters v. Vroom Inc.*, No. 22-cv-1191, 2023 WL 187577, at *1 (S.D. Cal. Jan. 13, 2023) (finding "the Federal Arbitration Act would govern" and "the arbitration was subject to California Code of Civil Procedure Sections 1281.97 and 1281.98 [S.B. 707]"); *Russell v. Wyndham Vacation Resorts*, Inc., No. 22-cv-0880, 2023 WL 139803, at *5 (S.D. Cal. Jan. 9, 2023); *Dekker v. Vivint Solar, Inc.*, 479 F. Supp. 3d 834, 839 (N.D. Cal. 2020) (applying S.B. 707 even though the FAA governed), *rev'd on other grounds*, No. 20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021).

14

AAA's Consumer Arbitration Rules at 16 (Rule 12) (emphasis added). AAA confirmed this rule in correspondence. That means the bills were "due" under section 1281.97(a) at the time of filing. Kohl's failure to pay the fee to register the agreement was why AAA would not administer the arbitrations.

At the very latest, the registration and review fees became due on June 7, 2023, when the AAA gave written notice to the Parties that before AAA could proceed with administering Petitioners' arbitrations, "Kohl's, at a minimum, must register its arbitration clause that names the AAA on the Consumer Clause Registry on our website," and "resolve[] any outstanding payment obligations." June 7, 2023 AAA Letter at 2. If the registry and review fees were not already overdue by then, they became due that day. *But see Dekker*, 479 F. Supp. 3d at 839 (explaining that it would "subvert the whole point of [Section 1281.97]" if the arbitral forum could postpone the 30-day grace period).

### III. CONCLUSION

The Court should compel Kohl's to arbitrate in accordance with the AAA Arbitration Agreement, including Rule 12 of AAA's Consumer Arbitration Rules, which requires Kohl's to pay all fees associated with the review and registry of the AAA Arbitration Agreement on AAA's Consumer Clause Registry. No discovery is appropriate because Kohl's has failed to allege that any Petitioner interacted with Kohl's before filing her AAA arbitration demand, and because all alleged interactions postdating those demands are insufficient under Wisconsin law to establish unequivocal acceptance of the 2023 Terms. The Court should also order Kohl's to pay Petitioners' attorney's fees and costs in those arbitrations under S.B. 707.

Dated: February 12, 2024        By:   */s/ Albert Y. Pak*

**KELLER POSTMAN LLC**
Albert Y. Pak
 *albert.pak@kellerpostman.com*
Noah Heinz
 *noah.heinz@kellerpostman.com*
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: 202.918.1123

Ethan H. Ames
 *ethan.ames@kellerpostman.com*
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312.741.5220

**KITNER WOODWARD PLLC**
Martin Woodward
 *martin@kitnerwoodward.com*
13101 Preston Road, Suite 110
Dallas, TX 75240
Telephone: 214.443.4300

*Attorneys for Petitioners*